The opinion of the court was delivered by
Valentine, J.:
The first question presented in this case is as to the sufficiency of the petition in the court below. This question was raised by demurrer, by objecting to the introduction of any evidence under said petition, and by motion in arrest of judgment. The petition stated substantially that Kimberlin owned and had the possession and the right of possession of certain cattle; that the title and the right of possession, however, to them was in dispute between said Kimberlin and one David Auld and one George W. Taylor; that an action of replevin was pending in Brown county between said Kimberlin and Auld & Taylor, in which Kimberlin was plaintiff and Auld & Taylor were defendants, *583 brought for the purpose of determining said title and said right of possession; that while said action was so pending Kimberlin sold said cattle to Simpson and Carmichael, (plaintiffs in error,) and received in payment therefor about $2,600; that afterward Auld & Taylor took said cattle from Simpson and Carmichael forcibly, wrongfully, and tortiously; that Kimberlin then loaned to Simpson and Carmichael $2,600, and took from them the following instrument in writing, to-wit:
“Whereas, the undersigned bought of H. V. Kimberlin among other cattle, forty head of work oxen which are claimed by David Auld, and about the title to which cattle there is now litigation between said Auld and said Kimberlin, and which said cattle said Auld has caused to be taken from the undersigned, and which said cattle are now of the value of twenty-six hundred and,fifty dollars: therefore, now in consideration that said Kimberlin has furnished us the full sum' of twenty-six hundred dollars on account of the said premises, we agree to-pay the said Kimberlin the said sum of twenty-six hundred dollars so soon as he shall sustain his right and title to sell said cattle to us, or on our behalf, together with so much of the damages so récovered as shall pay to Kimberlin the interest upon the said money, and the expensé of sustaining his said right and title.
“Dated, June 14th, 1867. T. E. Simpson.
D. Carmichael.”
“Done in presence of W. W. Guthrie.”

*584
1. Written contracts: construction of; parol evidence; extrinsic facts.

*585
2. paroi contract, Written eviaenee.

*583 Said petition further stated that Simpson and. Carmichael agreed to refund or to pay back to Kimberlin said amount of $2,600, with interest, when Kimberlin should establish his right to said cattle by said action in Brown county, and when Simpson and Carmichael should recover that amount from Auld & Taylor; that Kimberlin did establish his right to said cattle by said action in Brown county by obtaining a judgment therein in his favbr for the title and possession to said cattle; that Simpson and Carmichael instituted an .action for damages against said Auld & Taylor for the tortious taking of said cattle, but that they afterward fraudulently, and for a full consideration paid to them by Auld & Taylor, refused to properly or in good faith prosecute their said action; *584 that Kimberlin then demanded from Simpson and Carmichael said $2,600 and interest, but that Simpson and Carmichael failed and refused to pay the same or any part thereof. The petition gives the dates of the different transactions. These we have omitted. The petition also states all the facts with greater detail and in a more circumstantial manner than we have stated them. At the close of the petition is a demand for judgment for $2,600 and interest. Is this petition sufficient? The first question is with reference to said written instrument. That a contract of some kind, written or parol, or partly both, was made between the parties, that the same has been executed and fulfilled on the part of Kimberlin, and that all this is sufficiently stated in the petition, we suppose no one can question. But whether said contract was a written or parol contract, or partly both, and whether it was void or valid, are the questions propounded for our consideration. If said written instrument is sufficiently definite and certain, in and of itself, to constitute a valid contract, then of course the plaintiffs in error have no reason to complain. If it is sufficiently definite and certain so that by the aid of extrinsic and surrounding circumstances its terms may be understood, and when so understood the instrument constitutes a valid contract, then in like manner plaintiffs in error have no cause to complain. For all written contracts may be examined by the light of extrinsic and surrounding circumstances; and evidence may always be introduced for this purpose. (2 Parsons on Contracts, 548 to 566.) Of course, parol evidence can never be introduced to contradict or vary the terms of a written contract, (except where directly attacked in a court of equity for fraud or mutual mistake,) but parol evidence of surrounding facts and circumstances may always be introduced to explain the terms of a written contract where such terms are not in and of themselves sufficiently plain and obvious, or where other evidence has already been introduced tending to make such terms uncertain or ambiguous. The terms of the instrument we are now considering are not very plain; but *585 when explained by surrounding facts and circumstances they become plain, or at least they become sufficiently plain to make the instrument valid and binding as a written contract. But even if this instrument is so fatally uncertain as to be void as a written contract, still the plaintiff be-_ • x low (Kimberlin, whose petition contains sufficient allegations therefor,) may rely upon the parol contract which was actually made between the parties, and which was intended to be embodied in this written instrument, and may introduce the instrument in evidence as a written admission of Simpson and Carmichael in part proof of the terms of said parol contract. There is no law that requires that the contract which was actually made between the parties should be reduced to writing in order to be valid.
3. contract - duty uabiüty fot reac ' The next question is, whether the allegations, in the petition, that Simpson and Carmichael did not promptly or in g00^ faith prosecute their action against Auld & Taylor to recover damages for the unlawful taking of said cattle, are sufficient. We think they are; but the question whether they are, or are not, we think was rendered wholly immaterial by the subsequent pleadings and proceedings. The subsequent pleadings and evidence show that Simpson and Carmichael did in fact prosecute said action to judgment, but that they recovered judgment for $698 only, when it is admitted that the cattle were worth about $2,650, and they never attempted to collect even this judgment. The ease at bar was prosecuted upon the theory that said action of S. & C. against A. & T. was not prosecuted in good faith; and the present action was fairly tried and submitted to the jury, upon proper instructions from the court, upon that theory. It was tried upon the theory that if Simpson and Carmichael prosecuted their said action against Auld & Taylor in good faith to judgment, and then in good faith endeavored to collect said judgment, that Kimberlin could not recover anything from them; if however they prosecuted their said action in good faith to judgment and then refused to collect said judgment, that Kimberlin could recover from them the *586 amount of said judgment, and no more; but if they failed or refused to prosecute their said action in good faith, then that Kimberlin could recover from them what they ought to have recovered and collected from Auld & Taylor by a faithful prosecution of the action, up to $2,600, and interest. The jury found in favor of Kimberlin, and against Simpson and Carmichael, and assessed the amount that Kimberlin should recover at $2,015. The evidence brought to this court tends strongly to sustain the verdict of the jury; but all the evidence is not brought to this court, hence we must presume that the verdict was sustained by ample evidence. We think the present action was in fact prosecuted upon the theory set forth in the petition, and that that theory presented a cause of action. The present action was fairly tried. No one seems to have been surprised. No one had any right to be surprised. And in such a case, even if the petition should be technically defective in some of its allegations, still we should not reverse the judgment for that reason alone,when no substantial rights were affected, and no substantial error committed.

, .. 8wer; reply,

The next question arises upon the defendant’s motion to strike out the fifth clause of the plaintiff’s reply, and upon the defendant’s demurrer to said clause. This clause of the reply was intended to be responsive to the third defense of Carmichael’s answer, and to the fourth defense of Simpson’s answer. Now if these defenses stated no defense to the plaintiff’s petition, then we suppose said clause of the reply was a sufficient reply to them, whatever it may have contained, and the court could not have committed any substantial error by overruling said motion and said demurrer. Now we think that said defenses did not state any defense. They stated in substance that Simpson and Carmichael did prosecute their said action against Auld & Taylor to judgment. But they failed to state what the amount of the judgment was, or that Simpson and Carmichael ever attempted to collect the same, or that they ever did anything further in the premises. Simply obtaining a judgment, we think was no defense. Stopping anywhere short of actually *587 paying over to Kimberlin said $2,600 and interest, or so much thereof as could by the exercise of reasonable diligence have been collected from Auld & Taylor, would have been a breach of said contract. The plaintiff in said fifth clause of his reply admits that a judgment was rendered in favor of Simpson and Carmichael in their said suit against Auld & Taylor, but says that the amount was only $698, and that S. & C. refused to collect even that amount, although Auld & Taylor were amply responsible. Now if this clause had been wholly stricken from the reply, how much better off would the defendants Simpson and Carmichael have been? We think not any. Hence-no material error was committed by the court in this respect.
Grounds of obevideuce to e stated. The plaintiffs in error say that the testimony of the witness' Guthrie was incompetent for various reasons, among which was> the question which elicited it was leading; and yet the court below permitted the evidence to go to the jury over the objections of plaintiffs in error. We find however by an inspection of the record that the objection to the evidence was not made for any one of said “ várious reasons,” nor for any reason. The court therefore did not err in overruling the objection to said evidence. The court may have supposed that plaintiffs in error objected merely because the question was leading, and may have intentionally, in its discretion, permitted a leading question to be asked and answered: It is a general rule that when evidence is objected to, and no reason is given for the objection, the court may overrule the objection without committing any error, unless the particular reason for the objection is manifestly obvious. (Walker v. Armstrong, 2 Kas., 199, 226; Wilson v. Fuller, 9 Kas., 176; K. P. Rly. Co. v. Pointer, 9 Kas., 620; Ferguson v. Graves, supra, 39.)
6. practícenleevidence. When the plaintiff below rested his case the defendants demurred to the evidence, and the court overruled the demurrer. The defendants (plaintiffs in error) now assign said ruling for error. There are at least two answers to said assignment: First, the plaintiffs below *588 had made out a prima facie case when said demurrer was interposed; Second, afterward both parties proceeded with the trial and introduced further and additional evidence; and as the jury found in favor of the plaintiff, and as all the evidence is not brought to this court, it must now be pi’esumed that ample and sufficient evidence was introduced upon every point, and that would cure any original defect of evidence, or any error of the court in overruling the demurrer. Besides, it is doubtful whether this court would ever in any case reverse a decision of the court below simply because the court below overruled a demurrer to evidence.

7 who may SuduSnt judgment.

8. judgment; Relief against.

*589
9 when judgpeachea1'

*588 The defendants below offered to prove that Kimberlin obtained his said judgment against Auld for said cattle, in said Brown county replevin suit, by fraud. The court excluded the evidence. The plaintiffs in error claim that this ruling was erroneous. We think however it was not erroneous. Now, suppose said judgment was obtained by fraud, still Simpson and Carmichael have no impeach it, or to complain of it. The fraud was not perpetrated against them, nor their rights. It did not affect them injuriously. It rather tended to affect them beneficially. It was to their interest, as well as to that of Kimberlin, that the title to the cattle should be determined to be in Kimberlin as against Auld, for as they held under Kimberlin such determination would establish their right to the cattle as against Auld. Neither said fraud nor said judgment could affect the rights of any person injuriously, except the rights of Auld, or of some person in privity with him or claiming under him; hence no person but Auld, or some person in privity with him or claiming under him, had any right to complain of said judgment. But even Auld, and those in privity with him or claiming under him, could not impeach said judgment collaterally, as was attempted to be done by the attempted introduction of said evidence. Every judgment, whether obtained through fraud or not, is valid and binding and conclusive as to all parties thereto, and their privies, until reversed, vacated, *589 set aside, or perpetually enjoined by some proceeding instituted directly for that purpose. As to parties and their privies, a judgment cannot be held void and inoperative in one case, and still be allowed to stand and be held binding and effective in other cases. As to them, it must either be totally destroyed as a judgment, or else must have all the force and effect of a judgment. It is perhaps true under our system of practice, that where a plaintiff relies upon a judgment obtained through fraud, the defendant may set up the fraud in the same suit by way of answer, and ask that the judgment be set aside or perpetually enjoined; but if so, the answer must contain all that would be required in a petition filed by a plaintiff for such a purpose; and all the necessary parties must be brought béfore the court. These requirements are not fulfilled in the present case. It is undoubtedly true, as we think, that where a judgment has been reversed, vacated, set aside, or enjoined by a proper proceeding, and the record of the judgment has been introduced in evidence, the record of the reversal, vacation, setting aside, or enjoinment, may also be introduced in evidence for the purpose of showing such reversal, etc., for the record of the reversal, etc., is of as high a character as the record of the judgment; and being a part of the same litigation it is substantially a part of the same record. But there is a vast difference between showing by a judicial record that a judgment has already been nullified, and showing by parol evidence that a judgment ought to be nullified. A judgment that merely ought to be nullified, is still a judgment; but a judgment that has already been nullified, is no judgment at all. As we have ali^ady said, a judgment can never be impeached collaterally by any person who was a party thereto, or who is in privity with any person who was a party thereto. It can be impeached collaterally only by some stranger to the record. And even then it can be impeached only by such a stranger as holds some pre-existing, independent, and conflicting right, that would be affected injuriously if the judgment were allowed to have full opera *590 tion. Now Simpson and Carmichael are not strangers at all to said judgment. Kimberlin was a party thereto, and Simpson and Carmichael hold under Kimberlin, and in privity with him. Their title to said cattle was simply Kimberlin’s title. And they entered into said contract with the understanding that the litigation which resulted in the rendering of said judgment should be the final determination of said title as to all of them. But even if Simpson and Carmichael should be considered as strangers to said judgment, still they obtained all their rights (the right to said cattle, the right to said $2,600, and the right to sue Auld & Taylor,) under and through Kimberlin; and all of these rights are in harmony with said judgment, and none of them are in conflict therewith. Besides, a stranger even cannot impeach a judgment for fraud, unless it would be unjust and inequitable to enforce the judgment as against him. In *the present case it would be unjust and inequitable not to enforce said judgment as against the defendants below, so far as it may affect them.

10. Damages; as-ferret — in-*

■We do not think that it is necessary to discuss the-instructions, for we have already discussed all the substantial legal questions involved in the case. Those given embodied the law of the case, and those refused were refused because they did not embody the law of the case, or because they were given substantially in some of the 'other instructions. The instructions were fully as favorable to the defendants as to the plaintiff. The instructions were such that it was wholly impossible for the jury to find the verdict that they did find upon any other theory than that the defendants Simpson and Carmichael did not prosecute their said action against Auld & Taylor in good faith. And as the evidence is not all brought to this court we must presume'that the verdict was sustained by sufficient evidence. It is claimed that the court did not charge the jury correctly with regard to the measure of damages. Now upon the theoxy that the plaintiff was entitled to some damages, and upon the theory that the judgment rendered in favor of the defendants and against Auld & Taylor for $698, was not *591 the true measure of damages, (and both of these theories we must assume as correct, under the verdict of the jury,) then what should have been the charge with regard to the measure of damages ? There was not a particle of evidence that tended to show that the damages were less than what the jury found them to be. Indeed, there was not a particle of evidence that tended to show that they were less than $2,600 and interest. In fact, all the evidence upon the point brought to this court tended to show that $2,600 and interest was the proper and just amount of the damages. .That was the amount that was loaned by Kimberlin. to the defendants, and the defendants admit that the cattle taken from them by Auld & Taylor were worth $2,650. Then upon what evidence is it claimed that the court should have charged so that the jury would have found for a less sum than they did find? We have discovered no such evidence, and therefore we perceive no substantial error upon this point.
In answer to some other questions attempted to be raised by plaintiffs in error we would say: First, the Brown county judgment determined specifically that Kimberlin was the owner of said cattle at the commencement of that suit, and there was not a particle of evidence in this case tending to show that Kimberlin ever sold the cattle to Auld & Taylor, or to any other person except to Simpson and Carmichael. Second, no judgment could have been rendered in the case of Simpáon and Carmichael against Auld & Taylor except upon the theory that said cattle, or some portion of them, belonged to Simpson and Carmichael at the time they were taken by Auld & Taylor from Simpson and Carmichael; for the issues were so framed that title to the cattle was the main issue in the case upon which all the other issues depended. Third, Auld & Taylor had no right to show in the case of Simpson and Carmichael against Auld & Taylor that the Brown county judgment was obtained through fraud; for as we have before said, a judgment is valid, binding and conclusive upon all parties and privies until reversed, vacated, set aside or enjoined in a direct proceeding instituted for that *592 purpose. Auld & Taylor were parties on one side to said judgment, and Simpson and Carmichael were in privity with Kimberlin, who was a party on the other side to said judgment. Simpson and Carmichael held their title to the cattle under Kimberlin. Besides, no issue was made by the pleadings in this last-mentioned case with regard to the validity or infirmity of said judgment.
The judgment of the court below is affirmed.
All the Justices concurring.