## HANNAH LEE v. ISAAC RYDER *et al.*

1. NOTE AND MORTGAGE — *Consideration — Burden of Proof — Error.* Where the plaintiff brings an action on a note and mortgage, and the defendant, in answer thereto, alleges that they were given without consideration, and the execution thereof was procured by threats and intimidation, the burden of proof to establish their invalidity is thrown on the defendant; and on the conclusion of the evidence for the defense, and the defendant has rested her defense, it is error for the court to sustain a demurrer to the evidence, and withdraw the case from the jury, where the evidence tends strongly to prove the facts set up in the defendant's answer.

2. ——— *Procured by Duress — Action, Maintainable.* Where a note and mortgage are procured by threats and intimidation they are absolutely void; and where the payee named in the note, after having procured its execution and delivery by means of threats, without any valuable or good consideration, and then voluntarily leaves another note and chattel mortgage in the hands of the party so executing the note and mortgage as a pretended consideration therefor, and the note and chattel mortgage formed

no part of the consideration for the note and mortgage, and the party received no benefit from said note and chattel mortgage, and claims no right under them, the defendant is not bound to surrender or offer to surrender the note and chattel mortgage before she can maintain her defense to the action on the note and foreclosure of the mortgage.

MEMORANDUM.—Error from Miami district court; JOHN T. BURRIS, judge. Action on a note and mortgage by Isaac Ryder and others, partners under the name of Ryder, Shane & Hyman, against Hannah Lee. Plaintiffs recovered judgment, and defendant brings the case here. Reversed. All the material facts are stated in the opinion, filed August 6, 1895.

*Crossan & Lane*, for plaintiff in error.

*Scroggs & McFadden*, for defendants in error.

The opinion of the court was delivered by

JOHNSON, P. J. : This is a suit on a note and mortgage. The plaintiffs below, Ryder, Shane & Hyman, in their petition, allege that on the 20th day of January, 1890, Hannah Lee, at Louisburg, Kas., made her certain promissory note of that date and delivered it to Joseph Johnson, and thereby promised to pay to the said Joseph Johnson the sum of $193.25 in monthly installments of $10 each month, on the 20th day of each month, beginning the 20th day of February, with interest at the rate of 10 per cent. per annum until paid, and for the purpose of securing the payment of the money in said note at the times therein specified, executed and delivered to Joseph Johnson a mortgage deed, bearing date of January 20, 1890, and thereby granted, conveyed and mortgaged to said Johnson, his heirs and assigns, the undivided one-half of the northeast fractional quarter of section 1, township 16, range 24, containing $179\frac{40}{100}$ acres, in Miami

county, Kansas; that said note and mortgage were duly indorsed and transferred by Johnson to said Ryder, Shane & Hyman before due, and that the mortgage was duly recorded in the office of the register of deeds of Miami county, Kansas, and allege that there was paid upon said note at the time of its execution $20, leaving a balance due of the sum of $173.25, for which they ask judgment and a decree of foreclosure of the mortgage. To this petition the defendant below filed her answer, setting out three separate answers or defenses to said action. The first was a general denial of all material allegations. For a second answer the defendant admitted the execution of the note and mortgage set out in plaintiffs' petition to Joseph Johnson, and that Joseph Johnson was the agent and attorney for Ryder, Shane & Hyman, and that Joseph Johnson took the note and mortgage in his own name in trust for said plaintiffs and as their agent and attorney; that Joseph Johnson as agent and attorney for said Ryder, Shane & Hyman, before and at the time of the execution of the note and mortgage, represented to Hannah Lee that one George W. Lee, son of hers, had made a debt with Ryder, Shane & Hyman, and had secured the same by a chattel mortgage, executed in the state of Missouri, on certain household goods included in said mortgage, and had removed them out of the state of Missouri, and now refused to pay the debt; that said George W. Lee had violated the criminal laws of the state of Missouri by selling and removing said goods, and that Ryder, Shane & Hyman, and himself as agent and attorney for them, were now going to prosecute George W. Lee for the felony committed in selling and removing said goods, and cause the said George W. Lee to be sent to the penitentiary of the state of Missouri, and by

many like threats so worked upon the fears of the defendant so that she was influenced and coerced to give said note and mortgage ; and her actions were further influenced by said Johnson promising that, if she would pay or secure said debt made by said George W. Lee, then the said Ryder, Shane & Hyman, nor himself, as agent and attorney for them, would not prosecute or cause or permit to be prosecuted the said George W. Lee for the crime committed by him in the violation of the laws of the state of Missouri ; and the defendant, Hannah Lee, being greatly moved by her fears and love for George W. Lee, who was her son, executed and delivered said note and mortgage as aforesaid, in order to keep said Ryder, Shane & Hyman, or said Joseph Johnson, as their agent and attorney, from carrying out said menaces and threats, and for no other purpose whatever ; that said note and mortgage were given without any valuable or good consideration, and that said Hannah Lee is not now and never has been indebted to the said Ryder, Shane & Hyman in any sum whatever, and that she has not at any time received of them, or any one of them, any valuable or other consideration for the execution and delivery of said note and mortgage. The third paragraph of the answer of the said Hannah Lee alleges that the said Ryder, Shane & Hyman are indebted to her in the sum of $20, and interest thereon at the rate of 7 per cent. per annum from the 20th day of January, 1890, for money paid and advanced on the note described in the plaintiffs' petition ; that the note is void and without consideration, having been obtained by fright and coercion, as described in the second cause of defense of her answer ; and asks judgment against the plaintiffs below for the sum of $20 and interest thereon ;

and that said note and mortgage may be held to be void and of no effect, and for costs of her suit. To this answer the plaintiffs below filed a reply, denying generally each and every allegation in the answer of the defendant below. Upon these issues the parties proceeded to trial at the February term, 1891, before a jury, the court holding that the burden of the issue was on the defendant below, and thereupon she proceeded to the introduction of testimony in support of her defense. After the defendant had introduced all of her evidence and rested her defense, the plaintiffs demurred to the evidence on the ground that no defense to plaintiffs' action had been proved. The district court sustained the demurrer and took the case from the jury and rendered judgment for the plaintiffs against the defendant, as prayed for in their petition, and decreed a sale of the mortgaged property. The defendant below excepted, and brings the case into this court for review.

The defense to the plaintiffs' action below was that the note and mortgage sued upon were executed by Hannah Lee to Joseph Johnson, who was the agent and attorney for Ryder, Shane & Hyman, and the note and mortgage were simply taken in the name of Johnson, in trust for his clients, and that no valuable or good consideration was given for the note and mortgage, and that the note and mortgage were absolutely void. Whether there was any consideration for this note and mortgage, and whether the same were procured by fraud and through fear produced by the threats of Johnson, were the main questions to be tried, and, if there was any evidence tending to prove these facts, the question should have been submitted to the jury. (*Simpson v. Kimberlin*, 12 Kas. 579 ; *Jansen v. City of Atchison*, 16 id. 358 ; *Railroad Co. v. Dryden*, 17 id. 278 ; *Railway Co. v. Couse*, 17 id. 571 ;

*Railroad Co. v. Doyle,* 18 id. 62 ; *Schafer v. Weaver,* 20 id. 296 ; *Waterson v. Rogers,* 21 id. 529 ; *Brown v. Railroad Co.,* 31 id. 1 ; *Christie v. Barnes,* 33 id. 317 ; *Railway Co. v. Adams,* 33 id. 427 ; *Lowe v. Higginbotham,* 36 id. 765 ; *Kiff v. A. T. & S. F. Rld. Co.,* 32 id. 263.) Therefore, if the evidence on the part of Hannah Lee was *prima facie* that this note and mortgage were executed by her to Joseph Johnson, that he was at the time the attorney of Ryder, Shane & Hyman, that the note was simply taken in his name in trust for his clients, that there was no valuable consideration moving from them to her, and that she executed the same through fear, produced by threats of Johnson that if she did not give the mortgage he would send her and her family to the penitentiary, then the note and mortgage were absolutely void. There were a number of witnesses examined on behalf of the defendant below, and their testimony all goes to prove that this note and mortgage were given to Joseph Johnson, who was at the time the attorney and agent of the plaintiffs below; that the same were given without any valuable or good consideration whatever ; that the execution of the note and mortgage was procured by threats and intimidation on the part of the said Johnson. Florence J. Lee, the daughter-in-law of the defendant below, testified as follows :

'' On the 20th day of January, 1890, when I came home, I came through the kitchen ; and when I went in there they told me that the lawyer was there — Mr. Johnson, of Kansas City — and I went to the door and heard him say to Mrs. Lee, ' You have got to fix this up, either money or mortgage, or I will penitentiary you and your whole family.' ''

Mrs. Ella Pratt, daughter of the defendant, testified as follows :

'' I heard the conversation between Joseph Johnson

and defendant on January 19, 1890.   He came down there, and wanted her to give him a mortgage on the farm, and she told him she was n't able to do it, and told him to go away and let her alone ; and he came up to her and shook his finger at her, and said, ' You will settle this ; ' and this is all I heard on Sunday, and I left the room.   I was present the next day, on Monday.   He came down there, and mother was very sick with la grippe.   He said he was down there on the same business he was there on Sunday, and he said he had papers from the governor of Kansas to take her to Kansas City if she did n't settle that debt by money or mortgage, and that the papers would cost her $400.''

Sally Lee, daughter of the defendant, testified as follows :

'' I remember Mr. Johnson coming to mother's on Sunday, the 19th of January, 1890.   Did n't hear the conversation between them.   I heard the conversation between them on Monday, the 20th.   He said he came down there for the same purpose that he did on yesterday.   He says, ' Now you have to settle this business.'   He says, ' I have got papers from the governor to take you back to Kansas City, and put you in jail, and hold you there until the day of trial, and penitentiary you and the whole outfit, if you do n't settle this business.'   He patted his pocket, and says, ' I have the papers in my pocket.' ''

David Patten testified, that on the 19th and 20th of January, 1890, he was boarding at the house of Hannah Lee ; that he heard the conversation between Johnson and Mrs. Lee on Monday, the 20th of January.

'' Mr. Johnson came there and says, ' I came to see you in regard to the same business I was here on yesterday.'   He says, ' I do n't like the way of the business, and if you do n't settle this, I have got papers from the governor of the state of Kansas to take you back to Missouri for trial ;' and he said, ' that

will cost you $400.'   He swore in the house, and used bad language.''

Hannah Lee testified in her own behalf, and said :

'' I reside in Miami county, Kansas ; northeast part of the county.   Have resided there 15 years ;  am a widow, and have three children.   I have a half interest in the farm of 160 acres ;  live on the farm ;  met Mr. Johnson at my residence on Sunday, the 19th of January, 1890.   I suppose he came in on the noon train ;  he stayed there about 1½ or 2 hours ; I was very sick with la grippe ;  had been in bed one week, and was confined to my bed two weeks afterward.   He sat down right by my bed and talked to me ;· he came there and introduced himself to me as Mr. Johnson, of Kansas City, a lawyer ;  he said he came down there to see George W. Lee about some furniture he got ;  I told him he was n't at home, and he wanted to know if he did n't have $80 ;  I told him ' No, sir.' He said :  'If he has n't got nothing to pay this,' he said ' I have.'   ' I can 't,' I says ; ' I cannot ;  my little home has two mortgages on now.'   He says : ' I will have to take the third one ;  nobody will ever know the difference.'   I says : ' No, sir, I will not ;' and I said, ' Go away, and let me alone ;  I am a sick woman ;' and he stood there and shook his finger at me, and says, ' If he has n't got nothing, you have got to settle.'   That was the conversation on Sunday. That is all that I recollect of the conversation, for I was very sick.   On Monday he returned.   I suppose he came on the noon train.   And he came in, and come in my room, and he says : ' Now, madam, I am back here on the same business I was here on yesterday, and you have got to settle.'   I says, ' I will not ;'  he says, ' You shall ;'  and I says, ' I won't ;' and he says, ' Watch out, old lady, how you talk ;  I will show you.'   He says, ' I have got papers right here from the governor of Kansas to arrest you, and hold you until I get an officer and take you back to Kansas City, and put you in prison and keep you there until the day of trial, and then I will penitentiary you and your whole family ;'  and then went

on, and wanted to know if I would not be ashamed of myself and family to go to the penitentiary.   I said : 'George Lee's business and my business is just as separate as strangers.'   He says, 'That do n't make any difference ; he is your son, and you have got it to pay. You have got to give me the money, or a mortgage, or go to the penitentiary.'   He said he would send the whole family to the penitentiary.   He went on all afternoon with threats ; different threats.   He did n't use very nice language with me ; most of his talk was threats.   I got up out of my bed and went into the kitchen and stayed in there a little while, and by this time Mr. Crossan came and went to the room, and as Mr. Crossan came in he met him at the door, pulled out some papers from his pocket and says, 'Mr. Crossan, I have got her scared up in a hell of a shape ;' and Mr. Crossan was very cold, as it was very cold weather, and he went to the stove and warmed himself ; and by this time supper was ready, and they went into supper, and after that the business took place, but I could n't state how it was done. I was in a very critical condition ; very sick.   Then, after the papers were fixed up, Mr. Crossan says, 'If you have any papers, turn them over to Mrs. Lee.' "

Fanny A. Walker testified :

"I accompanied Mr. Johnson from Kansas City to Mrs. Hannah Lee's house, and on the way down he said if she did n't pay it, he would penitentiary her and the whole clique.   He said he had the power to take them right from there to Kansas City, and he was going to take them.   On the way back to the depot, Mr. Joseph Johnson says, 'Did n't I have the old woman scared?'   He says, 'I knew I would bring her to time.' "

W. B. Crossan was also examined as a witness, and in his examination it was developed that he was an attorney acting for Ryder, Shane & Hyman, and had been to see George W. Lee about the claim these parties held against him.   His testimony, so far as it re-

lates to the transaction there on the 20th of January, fully corroborates the testimony of Mrs. Lee.

The defense proved that the claim that Johnson was seeking to collect was one against George W. Lee, a married son of Hannah Lee, and was for the purchase of certain furniture sold by Ryder, Shane & Hyman to George W. Lee while he was living in Kansas City, Mo.; that his mother knew nothing about the purchase of the same, or that there was a chattel mortgage given by her son on the property, until Johnson came to her house on Sunday, the 19th day of January. It was the first time that she had ever seen Johnson, or had any knowledge of him. He approached her in the sick chamber, introduced himself as a lawyer from Kansas City, and in a very rough manner demanded of her a settlement of the debt against her son, threatened, if she refused to settle, that he would send her and her family to the penitentiary; and after making threats to her on Sunday went away and returned again the next day and informed her that he had procured the necessary papers from the governor of Kansas to take her to Kansas City, Mo., and there imprison her until her son could have a trial and then send her and her whole family to the penitentiary. After spending the entire afternoon in terrorizing the woman in her sick chamber, and when Crossan, who was the attorney for whom he had sent after to Paola, arrived, he informed him that he had her scared badly, and after this the note and mortgage were executed, the same being acknowledged by Crossan as notary public. With all this testimony before the court it was error to sustain the demurrer to the evidence, as a more high-handed outrage could scarcely be conceived than the evidence shows was perpetrated on Hannah Lee by the attorney and representative of the defendants in error.

It is claimed by counsel for defendants in error that the note and chattel mortgage given by George W. Lee to them were delivered to the plaintiff in error as a consideration for the note and mortgage, and the plaintiff in error, not having returned them to defendants, her defense must fail; that it was an indispensable prerequisite to her defense that she surrender them or offer to surrender them; that the contract was not void, but voidable only, and she must surrender all benefits she received under the voidable contract.

We do not so understand the law as applied to the facts in this case. The evidence contained in the record shows that there was nothing said about the transfer of the note and chattel mortgage, or no mention of them until after the note and mortgage of Hannah Lee had been procured; and then Crossan, one of the attorneys for Ryder, Shane & Hyman, said to Johnson, the other attorney of theirs, that if he had the papers he had better turn them over to Mrs. Lee. This is the only thing that was said in relation to turning over any papers to her, and she supposed at the time that Crossan referred to the papers Johnson had represented that he had procured from the governor for her arrest and deportation to Kansas City for trial on some criminal charge; as he had told her that, if she would give a note and mortgage in settlement of this charge, neither Ryder, Shane & Hyman, nor himself as their attorney, would prosecute them on the criminal charge nor allow the prosecution of the same; and this representation and promise on his part were the consideration for the giving of the note and mortgage, and Hannah Lee never received any benefit from the note and chattel mortgage. When Johnson handed them to Crossan they were laid on

the table and remained there. Hannah Lee never examined the papers; only took them from the table after Johnson and Crossan left and stuck them in the drawer, and afterward gave them over to Crossan, never having examined them to see what they contained; and at the trial it was shown that they were in the possession of Crossan. The defendant below was under no obligation to return these papers or account for their absence, as they were voluntarily left on the table. She had never agreed to receive them in consideration of the note and mortgage, and had no claim whatever upon them.

The judgment of the court is reversed, and the case remanded to the district court to set aside the judgment and grant a new trial.

All the Judges concurring.