MOBIL OIL CORPORATION, a Corporation; NORTHERN NATURAL GAS PRODUCING COMPANY, a Corporation; PAN AMERICAN PETROLEUM CORPORATION, a Corporation; ASHLAND OIL & REFINING COMPANY, a Corporation; SINCLAIR OIL AND GAS COMPANY, a Corporation; CITIES SERVICE OIL COMPANY, a Corporation; and COLUMBIAN FUEL CORPORATION, a Corporation, *Plaintiffs*, v. SHIRLEY MC-HENRY, individually and as County Clerk of Grant County, Kansas; and WILMA ARNOLD, individually and as County Treasurer of Grant County, Kansas, *Defendants*.

No. 45,196

PAN AMERICAN PETROLEUM CORPORATION, a Corporation; and SINCLAIR OIL AND GAS COMPANY, a Corporation, *Plaintiff*, v. MARY DIMMIT, individually and as County Clerk of Stanton County, Kansas; and PHYLLIS KISTLER, individually and as County Treasurer of Stanton County, Kansas, *Defendants*.

No. 45,199

MOBIL OIL CORPORATION, a Corporation; NORTHERN NATURAL GAS PRODUCING COMPANY, a Corporation; CITIES SERVICE OIL COMPANY, a Corporation; and COLUMBIAN FUEL CORPORATION, a Corporation, *Plaintiffs*, v. DOROTHY HARTLEY, individually and as County Clerk of Morton County, Kansas; and LOIS HALL, individually and as County Treasurer of Morton County, Kansas, *Defendants*.

(436 P. 2d 982)

Opinion filed January 10, 1968.

*H. E. Jones, Donald L. Cordes* and *Ralph M. Hope,* all of Wichita, argued the cause, and *Robert W. Richards,* of Oklahoma City, Oklahoma, *J. C. B. Aler,* of Dallas, Texas, *Robert J. O'Connor* and *Richard Jones,* both of Wichita, *Graydon D. Luthey,* of Bartlesville, Oklahoma, and *Ernest J. Rice,* of Topeka, were with them on the brief for the plaintiffs.

*A. E. Kramer,* of Hugoton, *L. LaVerne Fiss,* County Attorney of Stanton County, and *Keaton C. Duckworth,* County Attorney of Morton County, argued the cause, and *Richard M. Pickler,* County Attorney of Grant County, was with them on the brief for the defendants.

The opinion of the court was delivered by

SCHROEDER, J.: This is an original proceeding in mandamus filed by the owners of certain gas leaseholds in Grant County, Kansas, against the County Clerk and County Treasurer of Grant County to compel the performance of a legal duty imposed upon such defendants in matters relating to ad valorem taxes.

The substantive question presented is the validity of an order entered by the district court of Grant County which reduced the assessed valuation of all property situated in Grant County other than the property owned by the plaintiffs.

Similar proceedings were had in Morton and Stanton Counties, Kansas, and the owners of certain leaseholds in each of these counties likewise filed an original action in mandamus in this court seeking relief upon the identical issue presented in the Grant County case. These three actions have been consolidated by order of this court, but to avoid confusion, only the issues pertaining to the Grant County case will be discussed. Our orders (previously entered) and the opinion herein will control the disposition of all three cases.

On the 16th day of October, 1967, Mobil Oil Corporation, Northern Natural Gas Producing Company, Pan American Petroleum Corporation, Ashland Oil and Gas Refining Company, Sinclair Oil and Gas Company, Cities Service Oil Company and Columbian Fuel Corporation, hereafter referred to as plaintiffs, filed a petition for a peremptory order of mandamus in the Supreme Court against Shirley McHenry, individually and as County Clerk of Grant County, Kansas, and Wilma Arnold, individually and as County Treasurer of Grant County, Kansas. The plaintiffs in their petition allege they have special interests and rights with respect to the subject matter of this action which are peculiar to them and distinct from all other citizens and taxpayers in Grant County, Kansas, and in the State of Kansas; that they are owners of respective interests in certain leaseholds situated in Grant County which are subject to assessment and taxation for 1967 ad valorem tax purposes.

The plaintiffs allege they made due and timely 1967 ad valorem tax renditions to the County Assessor of Grant County, covering

such of their respective gas leaseholds as were situated in that county, using as a basis therefor the state gas production assessment schedule developed and promulgated by the Director of Property Valuation of the State of Kansas, pursuant to K. S. A. 74-2441 and K. S. A. 1965 Supp. 79-306b, for use in valuing gas leaseholds in the State of Kansas for 1967 ad valorem tax purposes. The petition then alleges:

"4. Grant County contracted with an independent appraisal firm doing business under the name and style of Prichard and Abbott to appraise, inter alia, the gas properties located in that county, which appraisal Prichard and Abbott undertook and completed in due course.

"Grant County thereafter determined the assessed valuation for 1967 ad valorem tax purposes of gas leaseholds located therein by reference to the Prichard and Abbott appraisal and the formula derived therefrom (Prichard and Abbott formula), and without reference to the aforesaid state schedule.

"5. The County Assessor of Grant County rejected plaintiffs' Returns covering their respective gas leaseholds as filed and rendered on the basis of the state schedule, and reassessed these properties on the basis of the Prichard and Abbott formula, with the result that said valuations were substantially increased.

"6. Thereafter, each of plaintiffs made due and proper complaint as to the assessed valuation of some or all of their respective gas leaseholds, to the Board of County Commissioners of Grant County, sitting as the County Board of Equalization of that county. After hearing, the Board affirmed the valuations of plaintiffs' respective gas leaseholds as determined and reassessed by the County Assessor of that county and rejected the valuations as determined and reported by plaintiffs.

"7. Thereafter, plaintiffs duly and properly perfected their respective appeals from the actions of the Grant County Board of Equalization to the State Board of Tax Appeals sitting as the State Board of Equalization. In this proceeding, Grant County appeared by three of its County Commissioners, and its County Clerk, the defendant herein, Shirley McHenry. The respective appeals of plaintiffs were consolidated for hearing, and were heard by the State Board of Equalization on July 10-12 and August 8, 1967."

The petition then alleged that after the State Board of Equalization heard all the evidence of the plaintiffs and of the counties, including Grant County, it made some preliminary conclusions and findings as follows:

"1. After careful consideration of arguments of counsel, the briefs submitted, and the authorities cited therein, it is the conclusion of the Board that the method of valuation, or schedule for gas producing properties prepared by and distributed by the Director of the Property Valuation Department of the State of Kansas, is of an advisory nature. Therefore it is not mandatory that said schedule be adopted or utilized by the various County Assessors.

"2. After careful consideration and comparison of the methods of valuation, or schedules presented to this Board, and after careful consideration of the

evidence submitted in conjunction therewith, the Board finds that the method of valuation, or schedule prepared by the Property Valuation Department of the State of Kansas, provides the best measure of justifiable value for gas producing properties."

(It is admitted that Prichard and Abbott is an appraisal firm from the State of Texas.)

The petition then alleged in substance that on the 14th day of August, 1967, the State Board of Equalization applied the method of valuation, or schedule as prepared and distributed by the Property Valuation Department of the State of Kansas, in the appeals pending before it, and entered its order finding, in substance, *that the plaintiffs' gas properties had "not been assessed uniformly and equally with other property in Grant County and in order to equalize the same with other property therein, the values thereof should be adjusted as indicated on the attached schedule."* (Emphasis added.)

It therefore ordered *"that the equalized valuation of said property be, and it is hereby fixed as set out on the attached Schedule 'A,' and that the County Officials of said county are hereby directed to correct their books and records in accordance with the provisions of this order."* (Emphasis added.)

The schedule attached to the petition with respect to the appeal of Mobil Oil Corporation is alleged to be representative of the orders filed in each of the respective appeals of the plaintiffs with the Board of Tax Appeals. It discloses Mobil Oil Corporation had forty-eight separate leases, and of the assessed valuation shown for these leases nine had the assessed valuation increased by the State Board of Tax Appeals sitting as the State Board of Equalization, and thirty-nine had the assessed valuation reduced. The total reduction in valuation of Mobil's leases was $622,265, and the total increase in assessed valuation of Mobil's leases was $40,570. The schedule discloses that *each lease owned by Mobil Oil Corporation was individually considered and the adjustment made in the assessed valuation varied from lease to lease over a rather wide percentile range.*

The plaintiffs allege the order of the State Board of Equalization fixed and determined property valuations for the plaintiffs which were equal to thirty percent of justifiable value. (This allegation is not admitted by the respondents' answer.)

The petition alleges that thereafter individual residents and taxpayers of Grant County commenced an action in the district court of Grant County against the County Clerk of that county seeking

to have their property reassessed, allegedly on the basis of the rate determined by the State Board of Tax Appeals in the aforesaid appeals of the plaintiffs herein. A copy of the petition filed in such individual taxpayer's suit is made a part of the petition herein and reads:

"Comes now the plaintiff Frank R. Collins and for his cause of action against the defendant alleges:

"1. That the question to be determined in this action is one of common interest to many persons and the said plaintiff therefore sues in this action for and on behalf of all such persons.

"2. That the plaintiff is a resident and taxpayer of Grant County, Kansas, and is the owner of real estate including farm land, city property, mineral interests, royalty interests, together with other real and personal property in said county and state. That all of said property is subject to taxation for the year 1967 and *the plaintiff is interested individually and is representative of such class and classes of persons who are owners of property in Grant County, Kansas in the matter of reduction of taxes as hereinafter set forth.*

"3. That the defendant, Shirley McHenry, is County Clerk and County Assessor for Grant County, Kansas, duly elected, qualified and acting in such capacity, and as such officer is preparing the tax roll for the current year's taxes upon which the taxes are based. That she is charged with the duty and responsibility of the preparation of the tax rolls covering all classes of property in Grant County, Kansas for the year 1967.

"4. *That the defendant is using values for the working interests of said gas leaseholds at a different rate than that used to assess the royalty interests, minerals, and real and personal property of this plaintiff and others, and that such assessment results in discrimination against the plaintiff and others similarly situated and violates Section 1 of Article 11 of the Kansas Constitution and is therefore void as to that rate of assessment on all property in excess of the rate applied on said working interests.*

"5. That this situation was *brought about by appeals by certain taxpayers* from the justifiable value fixed and determined by the proper taxing authorities of Grant County, Kansas *to the Board of Tax Appeals of the State of Kansas, which resulted in a reduction of the justifiable value in the instances of such appeals of approximately 27%.* The exact reduction is set forth in the respective orders of the Board of Tax Appeals and is made a part hereof by this reference.

"6. That the leaseholds have been reduced by the said Board from their original assessed values, and that *the rate of void assessment is 27% of assessed values on all property other than the working interests of the said leaseholds that have been reduced by said amount by the said Board.*

"WHEREFORE, Plaintiff prays for an order enjoining the defendant from assessing the property of the plaintiff and all others similarly situated in excess of the rate applied to the lowest assessed gas leasehold working interests." (Emphasis added.)

The answer filed in the private taxpayer action by the County Clerk of that county, as defendant, was made a part of the petition herein. It reads:

"Comes now the defendant, Shirley McHenry, and for her answer to the petition filed herein admits the truth of paragraphs 1, 2, and 3 in said petition, and further answering, the defendant states that the values being placed on the tax rolls are those determined by a professional appraisal firm hired by Grant County for purposes of said appraisal and approved by the Grant County Board of Equalization *except for the reduction of such values ordered by the State of Kansas Board of Tax Appeals being in the amount of $8,010,-271.00 on an appealed assessment which was a total of $29,347,689.00; that the defendant is spreading the assessment of record as ordered by said Board of Tax Appeals, and that said reduction ordered by said Board of Tax Appeals resulted in a net reduction at a rate of approximately 27%;* that this defendant is compelled by law to spread such values as set forth herein of record.

"WHEREFORE, the defendant prays the petition filed herein be dismissed." (Emphasis added.)

The answer was signed by the County Attorney of Grant County, Kansas, as attorney for the defendant.

The petition further alleged that in such private taxpayer action the plaintiffs therein and the County Attorney of Grant County, appearing for the defendant County Clerk, entered into a stipulation, which is made a part of the petition herein. It reads:

"Come now Frank R. Collins, plaintiff, and Richard M. Pickler, attorney for defendant herein, and stipulates as follows:

"1. That the County Clerk of Grant County, Kansas, in determining the assessed values of all property in Grant County, Kansas, used the same bases in determining assessed values of those properties appealed to the Board of Tax Appeals as applied to all other properties within Grant County, Kansas.

"2. *That the plaintiff represents as a class all locally assessed taxpayers except those who obtained a reduction in assessed valuation as shown by the attached orders which are the orders issued by the Kansas Board of Tax Appeals and by reference hereby made a part hereof, and that said orders show a reduction in assessed valuation of 27%.*" (Emphasis added.)

The petition further alleges that in such private taxpayer action the plaintiffs therein orally moved for summary judgment which the trial court granted. A copy of the order is attached and made a part of the petition herein. It reads:

"Now on this 7th day of September, 1967, comes on for hearing the oral motion for summary judgment made herein.

"The court, having considered the pleadings and evidence submitted and argument of counsel, finds that said motion should be granted.

"IT IS THEREFORE CONSIDERED, *ORDERED,* ADJUDGED AND DECREED *that the County Clerk of Grant County, Kansas be and she hereby is enjoined from*

*spreading on the assessment rolls of said County assessed values on all property in excess of the rate applied to the assessed valuations which were appealed to the State Board of Tax Appeals, said rate being seventy-three percent of the assessed values as determined by the defendant herein for the year 1967."* (Emphasis added.)

The petition herein alleges, and the exhibits attached thereto confirm, that in such private taxpayer action the petition, answer, stipulation and order of the district court were all filed with the clerk of the district court of Grant County at 2:00 p. m. on September 7, 1967. No summons was issued nor returned in that case.

The petition herein then alleged:

"16. Defendant Shirley McHenry, as the County Clerk of Grant County, has or is about to spread on the assessment rolls of Grant County assessed valuations on all taxable real and personal property located therein, other than gas leaseholds owned respectively by plaintiffs herein, at a rate not in excess of 73% of assessed values of such property as determined by said defendant for the year 1967, and has or is about to compute the sums to be levied on all taxable real and personal property located in Grant County, other than those applicable to plaintiffs, upon the basis of tax rolls so extended, and to set down the taxes computed upon said tax rolls, and has or is about to certify and deliver said tax rolls and computations of tax to defendant Wilma Arnold, as County Treasurer of Grant County.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"18. The aforesaid private taxpayer suit in the District Court of Grant County, and the imminent or accomplished acts of the defendants herein as County Clerk and County Treasurer of Grant County, respectively, acting pursuant to the Order made and entered in said private taxpayer suit, have, are and will continue to damage special interests or rights peculiar to these respective plaintiffs and distinct from those of all other citizens and taxpayers in Grant County, and in the State of Kansas, in the following respects: In that (1) the percentage of assessed valuation which plaintiffs' respective gas leaseholds in Grant County bear to the total valuation in said county, (2) the tax levies of plaintiffs' respective gas leaseholds in said county, and (3) the amount of tax which has been or will be computed as due and owing on plaintiff's respective gas leaseholds all have been, are and will be substantially raised and rendered substantially nonuniform and unequal with other property located in said county and in the State of Kansas.

"19. *The aforesaid private taxpayer action in the District Court of Grant County,* the imminent or accomplished acts of defendants herein, *and the special damage resulting to plaintiffs therefrom,* all as more fully alleged and set forth hereinabove, *are wrongful, unjust and illegal as respects these plaintiffs as distinct from all other citizens and taxpayers in Grant County, and in the State of Kansas, in the following respects:*

"1. Plaintiffs have been deprived of uniform and equal taxation and assessment of their properties located in Grant County, and in the State of Kansas, as required by Article 11, Sec. 1 of the Constitution of the State of Kansas, and by the laws of the State of Kansas.

"2. Plaintiffs have been deprived of that uniform and equal rate of assessment and taxation as determined by the State Board of Equalization in proper proceedings before it, and have thereby been deprived of valuable property rights peculiar unto themselves, without and contrary to due processes of law.

"3. The properties of plaintiffs located in Grant County have been arbitrarily, capriciously, and discriminatively singled out from the property of other taxpayers located in said counties and in the State of Kansas for unfair, unlawful and unjust treatment and for nonuniform and unequal assessment and taxation.

"4. The aforesaid damage resulting to plaintiffs is the direct and proximate result of a willful, malicious and fraudulent design on the part of defendants and others to produce the results, injustices and wrongs herein complained of.

"20. Plaintiffs have commenced no proceedings for relief in the District Court of Grant County for the reason that, in light of the facts as known to plaintiffs and as herein fully set forth, any such action would be futile and useless.

"21. Plaintiffs have no adequate and complete remedy at law and will suffer irreparable injury and damage if this Honorable Court does not issue an alternative writ of mandamus." (Emphasis added.)

Upon consideration of the plaintiffs' petition herein, this court took jurisdiction and on the 13th day of October, 1967, issued a summons and order to show cause, directing the defendants to show cause on or before the 23rd day of October, 1967, why a peremptory order of mandamus should not issue as prayed for in the plaintiffs' petition, and also directing the defendants to answer according to law.

On the 23rd day of October, 1967, the defendants filed a separate answer to the order to show cause, and thereafter on the 30th day of October, 1967, filed their answer. Aside from attacking the jurisdiction and propriety of this court to hear the matter of mandamus, and particularly the issuance of a peremptory order, the defendants in their separate answer to show cause state that the action herein is one which:

". . . attempts to impose a burden upon the County Clerk of Grant County, Kansas, Shirley McHenry, respondent herein of judging the validity of any order, lawfully issued by a District Court of competent jurisdiction, which, is certainly not within her prerogative to do.

"8. For further answer to the 'ORDER TO SHOW CAUSE,' the respondent, Shirley McHenry, the duly elected, authorized and qualified County Clerk of Grant County, Kansas, respectfully states to the court that she is preparing the tax rolls and computing the taxes on the assessed values ordered by the Grant County Board of Equalization as the same may be modified by certain orders by the State Board of Tax Appeals sitting as a Board of Equalization of the state of Kansas, *and the Grant County District Court*, all as required of her by the laws of this state.

"9. For further answer to the 'Order to Show Cause' the respondent, Wilma Arnold, the duly elected, authorized and qualified County Treasurer in and for the County of Grant, State of Kansas, respectfully states to this Honorable Court that she will use the assessed values and taxes all as computed by the Grant County Clerk, Shirley McHenry, and to collect the same as required by the laws of this state." (Emphasis added.)

The defendants' answer admitted the material allegations of fact in the petition as heretofore related, but specifically denied the conclusions drawn by the plaintiffs from the facts alleged.

In particular, the defendants admit the proceedings taken by the plaintiffs herein before the State Board of Tax Appeals sitting as a State Board of Equalization, with the results heretofore indicated; and they admit the private taxpayer action in the district court of Grant County in accordance with the exhibits attached to plaintiffs' petition and the results indicated by such exhibits.

In addition to the foregoing answers, on the 26th day of October, 1967, an answer and intervening petition was filed by Dan Sullivan, Jr. and John W. Alford as individuals, and the Southwest Kansas Royalty Owners Association, a nonprofit corporation, and the members of said association resident in Grant County, Kansas, as interveners. Aside from attacking the jurisdiction and the propriety of this court to hear this original proceeding in mandamus, the answer of the interveners undertakes to argue the merits of the controversy which will be discussed later in the opinion.

On this state of the record the Grant County case (consolidated with the Morton and Stanton County cases) was set for oral argument before the Supreme Court on the 30th day of October, 1967, when it was heard. After considering the briefs and oral arguments of the respective parties, the court found that the peremptory order requested by the plaintiffs should be granted, and on the 31st day of October, 1967, issued a peremptory order of mandamus which in pertinent part reads as follows:

"It is ordered that the defendant Shirley McHenry, individually and as County Clerk of Grant County, Kansas, shall assess for 1967 ad valorem tax purposes all taxable real and personal property located in Grant County at the values determined by said defendant for the year 1967, as said values may have been adjusted and equalized by the County Board of Equalization or the State Board of Tax Appeals sitting as the State Board of Equalization, and not at the values ordered by the District Court of Grant County, Kansas, and not at any other rate, and to spread such assessments on the tax rolls of Grant County, and to compute the sums to be levied on all such taxable real and personal property located in that county on the basis of such assessments, and to set the taxes as thus computed on the tax rolls of that county, and to cer-

tify and deliver the tax rolls as thus completed and extended and with the taxes as thus computed to the defendant Wilma Arnold, all as provided by law.

"It is further ordered that the defendant Wilma Arnold, individually and as County Treasurer of Grant County, Kansas, shall collect 1967 ad valorem taxes on all taxable real and personal property located in Grant County on the basis of the assessments as determined by the County Clerk of Grant County for the year 1967, as the same may have been adjusted and equalized by the County Board of Equalization or the State Board of Tax Appeals sitting as the State Board of Equalization, as aforesaid, and not on the basis of assessments ordered by the District Court of Grant County, Kansas.

"This order is issued now in view of the obligations and duties imposed upon the defendants by K. S. A. 79-1803 and 79-1804. A formal opinion will be filed when prepared."

Except for the names of the parties identical orders were issued in the Morton and Stanton County cases.

The substance of the plaintiffs' petition herein is to make a collateral attack upon the validity of the judgment of the district court of Grant County in the private taxpayer action, *wherein the district court reduced the assessed valuation of all taxable property in Grant County except that owned by the plaintiffs.*

We were informed in oral argument by counsel for the respondents herein, and counsel for the interveners, that the value of all gas leaseholds owned by the plaintiffs in Grant County is approximately one-half the value of all taxable property in Grant County.

In essence, the order of the district court of Grant County affected the ad valorem taxes to be imposed upon all property subject to tax in Grant County, and the same is true of similar orders made under similar circumstances by the district court in Morton and Stanton Counties. Thus, the court in this original proceeding in mandamus is confronted with a matter that affects the ad valorem taxes to be imposed upon all property subject to tax in three counties of the state which comprise the area commonly known as the Hugoton gas field in Kansas.

After stating the reasons why we think the order of the district court of Grant County in the private taxpayer action is *absolutely void,* we shall give our reasons for entertaining this original proceeding in mandamus.

The tax procedure and time schedule established by the legislature in Chapter 79 of the Kansas Statutes Annotated requires the work of taxation to be done speedily and to the end that the business of government may be carried on.

Annually, as of January 1, the County Assessor or the County

Clerk acting as Assessor shall supervise the listing and assessment of all real estate and personal property in the county subject to taxation, except state-assessed property. (K. S. A. 1965 Supp. 79-1412a, *Second,* and 79-301.)

Between January 1 and March 1 persons required to list property shall make and sign a statement listing all tangible personal property which he is required to list, and to deliver such statement of assessment to the County Assessor of the county where such property has its situs for taxation purposes. (K. S. A. 1965 Supp. 79-306 and 79-1422.) Oil and gas leases and oil and gas wells, producing or capable of producing oil and gas in paying quantities, are to be assessed and taxed as personal property. (K. S. A. 79-329.)

Persons, corporations or associations owning oil and gas leases, or engaged in operating for oil or gas, must file their assessment statement on or before March 20. (K. S. A. 1965 Supp. 79-332 [amended by L. 1967, Ch. 487, effective as of April 24, 1967].)

Upon receipt of the assessment statements, the County Assessor shall assess the tangible personal property so listed at thirty percent of its justifiable value, the County Assessor to determine such valuation by the use of valuation schedules, if any, furnished by the Director of Property Valuation. However, where a change is made by the County Assessor in the property listed he shall immediately, on or before May 1, notify the taxpayer who filed the original statement. (K. S. A. 1965 Supp. 79-306b.) Where the assessment of individual items of personal property is increased, the County Clerk shall so notify the person to be affected thereby, and shall fix the time and place when a hearing thereon may be had. (K. S. A. 79-1602 and 79-1606.)

Between May 1 and June 15 the Board of County Commissioners sitting as the County Board of Equalization shall hear and determine any complaint made by any taxpayer as to the assessment and valuation of any of his property situated in the county. After such final adjournment, not later than June 15, the Board of County Commissioners shall not change the assessed valuation of the property of any person or reduce the aggregate amount of the assessed valuation of the taxable property of the county. (K. S. A. 79-1602 and 79-1606.)

At any time after the adjournment of the County Board, the Director of Property Valuation may require the Board to reconvene and make such orders as the Director of Property Valuation shall

determine are just and necessary, to the end that all property shall be valued and assessed in the same manner and to the same extent as any and all other property, real or personal, required to be listed for taxation. ( K. S. A. 79-1404, *Sixteenth.*)

An owner of property who desires to complain to the County Board of Equalization as to the assessment of any of his property made prior to May 1 of the year of assessment, must file his written complaint with the County Clerk on or before May 5 of the year in which the assessment was made. ( K. S. A. 79-1606.)

And any person aggrieved by any order of the County Board of Equalization may appeal to the State Board of Tax Appeals sitting as the State Board of Equalization by filing a written notice of appeal within fifteen days after the date of the order from which the appeal was taken for a determination of such grievance. ( K. S. A. 79-1409 and 79-1609.)

K. S. A. 79-1409 provides:

"*The state board of tax appeals shall constitute a state board of equalization, and shall equalize the valuation and assessment of property throughout the state; and shall have power to equalize the assessment of all property in this state between persons, firms or corporations of the same assessment district,* between cities and townships of the same county, and between the different counties of the state, and the property assessed by the director of property valuation in the first instance. And any person feeling aggrieved by the action of the county board of equalization may, within fifteen (15) days after the decision of said board, appeal to the state board of equalization for a determination of such grievance.

"It shall be the duty of the state board of equalization to meet in its office on the second Wednesday in June of each year to perform the work of equalization as hereinbefore provided. *Whenever the valuation of any taxing district, whether it be a county,* township, city, school district, or otherwise, *is changed by the state board of equalization, the officers of such taxing district who have authority to levy taxes are required to use the valuation so fixed by the state board as a basis for making their levies for all purposes. In case a change is made in such valuation, said board of tax appeals shall certify the equalized values to the director of property valuation who shall forthwith certify the same to the county clerks of the several counties of the state or to the counties affected by such equalization; and the said county clerks shall carry the real estate and tangible personal property on the tax rolls of their respective counties at the valuations so certified, and shall use such valuations as the basis of all tax levies.*

"The director of property valuation shall apportion the amount of tax for state purposes as required by law to be raised in the state among the several counties therein, in proportion to the valuation of the taxable property therein

for the year *as equalized by the state board of equalization.*" (Emphasis added.)

The *legal duty of the County Clerk* is specifically set forth in K. S. A. 79-1803. It provides:

"*As soon as the action of the state board of equalization is certified to the county clerk he shall change the valuations as directed.* After all levies required by law to be certified to the county clerk shall have been so certified, he shall compute the sums to be levied upon each tract or lot of real property, in the name of the owner, if known, and upon the amount of personal property in the name of each person, company or corporation, which shall be levied equally upon all real and personal property subject to the same tax, and set down all taxes on the tax roll. He shall complete the same, and attach his certificate thereto, and deliver it to the county treasurer *on or before the first day of November,* and shall charge the treasurer with the amount of the respective taxes assessed on the tax roll. For every day after the first day of November that the county clerk shall retain such tax roll in his possession the county board shall deduct from his pay five dollars ($5.00)." (Emphasis added.)

The County Commissioners are required to meet on the first Monday of August in each year, and estimate and determine the amount of money to be raised by tax for all county purposes, and all other taxes which they shall be required by law to levy. (K. S. A. 79-1802.)

All taxes are due on the 1st day of November of each year. (K. S. A. 79-1804.)

The original proceedings in mandamus herein are primarily concerned with 79-1409, *supra,* and 79-1803, *supra,* above quoted.

The plaintiffs contend to permit interference with the foregoing procedure and schedule directed by the legislature in the manner ordered by the district court of Grant County in the private taxpayer's suit would be to introduce chaos into the tax procedure. The point is well taken.

From the state of the record as heretofore related, it is evident the plaintiffs took their alleged grievances, first to the County Board of Equalization, and then to the State Board of Tax Appeals. These official boards are the administrative agencies provided by law to determine controversies relating to assessments of property for ad valorem tax purposes. While these plaintiffs were denied relief by the County Board of Equalization, their efforts were successful in their appeal to the State Board of Tax Appeals, and the private taxpayer action brought in the district court of Grant County was designed to nullify the effect of the determination made by the Board of Tax Appeals.

It has been held from an early date that matters of assessment and taxation are administrative in character and not judicial. In *Symns v. Graves* (1902), 65 Kan. 628, 70 Pac. 591, it was said:

". . . Matters of assessment and taxation are administrative in their character and not judicial, and an interference by judges who are not elected for that purpose with the discharge of their duties by those officers who are invested with the sole authority to make and estimate value is unwarranted by the law. The district court could not substitute its judgment for that of the board of equalization, and this court cannot impose its notion of value on either. These are fundamental principles in the law of taxation and cannot be waived aside to meet the exigencies of any particular case. . . ." (p. 636.)

In the same decision the only grounds upon which there may be judicial interference were recognized as follows:

"But fraud, corruption and conduct so oppressive, arbitrary or capricious as to amount to fraud, will vitiate any official act, and courts have power to relieve against all consequential injuries. In every case, however, the departure from duty must be shown by the party seeking redress to fall within the well-defined limits of the powers of a court of equity. . . ." (p. 636.)

Other decisions adhering to the foregoing rules are *Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129; *Salt Co. v. Ellsworth County*, 82 Kan. 203, 107 Pac. 640; *Eureka B. & L. Ass'n v. Myers*, 147 Kan. 609, 78 P. 2d 68; and *Hanzlick v. Republic County Comm'rs*, 149 Kan. 667, 88 P. 2d 1111.

The relief sought in *Hanzlick*, supra, was substantially the same as that sought and ordered in the private taxpayer suit in Grant County. There an action for a declaratory judgment and a mandatory injunction to require a revaluation of certain real estate for purposes of taxation was attacked by demurrer. The lower court sustained a demurrer and the Supreme Court affirmed on appeal. The prayer in the petition was as follows:

" 'Wherefore, these plaintiffs pray that the court determine the actual values in money of such real estate, and require these defendants to place the same upon the tax rolls of Republic county, Kansas, and enjoin these defendants, and each of them from assessing and collecting any taxes upon the valuation as now fixed by the said assessing officers and boards; and that the court grant such other and further relief as is just and equitable in the circumstances; and that these plaintiffs recover their costs.' " (p. 669.)

In the opinion the court said:

"An examination of the prayer of this petition will demonstrate that the reason for the decision in *Finney County v. Bullard*, supra, is as good now as it was then. To hold otherwise would mean that every time a landowner was dissatisfied with the amount at which his real estate was assessed he could

commence an action and allege that the assessor and board of equalization had not considered the actual value of his real estate. Under such a condition the assessments never would be finished and taxing bodies never would be able to arrange their financial affairs. The result of a decision favorable to the contention of plaintiff would be to undo the work of assessing officers in this county. The courts can in no event fix a value of property for the purposes of taxation. The only function of a court in such case is to determine whether the valuation was arbitrarily or unreasonably made. (See *Union Pac. Rld. Co. v. State Tax Comm.*, 145 Kan. 715, 68 P. 2d 1.) The work of assessing property for taxation must be done speedily and the result must not be long in doubt. Had the prayer of this petition been granted, then all the property in Republic county would have to be reassessed. Chaos would be the result. The matter of first consideration is that the business of government should be carried on. All these considerations gave rise to the rule announced early in the history of our state that in the absence of fraud, or conduct amounting to fraud, the conclusion reached by the statutory officers and boards as to the tax value of real estate will not be disturbed by the courts." (p. 672.)

An examination of the language in Chapter 79 of the Kansas Statutes Annotated, and particularly sections 1409, 1412a, *Fifth,* and 1803, *supra,* shows that the duties which are imposed upon the County Clerk and the County Treasurer at this stage of the taxing process are clear, purely ministerial and in no sense discretionary. Essentially the process requires that the County Clerk, after all valuations and levies required by law to be certified to him, either by the County Assessor as to those amounts not appealed or by the County or State Board of Equalization as to those amounts which are appealed, compute the sums of tax due and spread them on the tax roll, and deliver the tax roll to the County Treasurer. The process then requires the County Treasurer to collect such taxes as computed and certified to him by the County Clerk.

Any doubts which may have existed as to the ministerial nature of these duties were dispelled by the court in *Continental Pipe Line Co. v. Cartwright,* 154 Kan. 430, 118 P. 2d 1052.

In an unbroken line of cases extending from 1870 to 1967, the Supreme Court of Kansas has established and consistently adhered to the principle that the assessment and valuation of property are administrative functions, not judicial ones, and that courts will not substitute their judgment for that of the assessing authority in the absence of fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud. This principle has been based upon the considerations of constitutional law, on the nature of the assessment and valuation functions, and on an inherent lack of power in courts.

This principle was first enunciated in *Auditor of State v. A. T. & S. F. Railroad Co.* (1870), 6 Kan. 500. In that case the Auditor of the State appealed directly to the Supreme Court from the appraisal of the property of the railroad made by the County Board of Clerks as a Board of Appraisers and Assessors. Appeal was taken in pursuance of a statute which expressly gave such jurisdiction to this court. The railroad moved to dismiss the appeal on the ground the Supreme Court had no jurisdiction of the matter because of the want of power in the state legislature to confer such jurisdiction upon the court. This court dismissed the appeal and held "that no jurisdiction of the character of that involved in this appeal, can be conferred upon this court without a manifest infringement of the constitution." (pp. 509, 510.)

In *Silven v. Osage County*, 76 Kan. 687, 92 Pac. 604, an appeal was taken to the district court from the decision of the Board of Equalization refusing to reduce the valuation of the plaintiff's property. The appeal was taken pursuant to a statute purporting to authorize the same, and not on the grounds of fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud. In affirming the lower court's dismissal of the appeal and holding the statute unconstitutional, this court said:

"The trial court held that this act attempts to make the district courts of the state share in the exercise of the taxing power and to confer upon those tribunals legislative and administrative functions with which they cannot be constitutionally vested. If the act were held to be valid it would operate to transfer to the courts a large part in the valuation of property for purposes of taxation, and in practical effect make them assessors. By the terms of the act any one dissatisfied with the valuation of his property may apply to the board of equalization to reduce the valuation and to reassess his property, and, if an unfavorable decision be made, take an appeal to the district court. The act provides that such an appeal shall be governed by the law relative to appeals from judgments of justices of the peace. Under that law the appeal vacates the judgment or decision and there is a trial *de novo* in the appellate court. The effect of such an appeal would be to set aside the assessment made, and would devolve upon the court the duty, not only of revising or correcting the assessment, but also of making a new and independent one, and thus substitute the judgment of the court, as to valuation, for that of the assessors. Since any aggrieved party may appeal, all owners of property may likewise avail themselves of the right; and thus the courts would be transformed into boards of assessment, with the responsibility of fixing the ultimate valuation of property for purposes of taxation. This is wholly impracticable, and, according to a number of decisions of this court, in contravention of the limitations of the constitution. *Under the constitution a court may only be vested with judicial power. The power of taxation is a legislative function. It is the province of*

*the legislature to determine the subject and extent of taxation and to provide the means and agencies for enforcing it. In the absence of constitutional restrictions the taxing power of the legislature is supreme and complete, and nothing in that instrument justifies a division of that power with the judiciary.*

. . . . . . . . . . . . . . . .

"While the taxing power is essentially a legislative function, the process of working out the legislative scheme of extending levies and collecting taxes is largely devolved on administrative officers, and much of what is done by them is ordinarily spoken of as an exercise of administrative power. In that way assessment has been designated *as an administrative act; but, of course, such an act is always understood to be a mere incident of the legislative power,* just as there may be administrative acts in the execution of the other great governmental powers. . . .

. . . . . . . . . . . . . . . .

"As has been seen, the act under which the proposed appeal was taken would operate to vacate the assessments made by the officers charged with that duty and give the courts authority to make new assessments, thus substituting their judgment of values for those of the assessors and boards of equalization. *The cited cases make it clear that such functions cannot be vested in the courts and that the act imposing them is invalid.*" (pp. 688-693.) (Emphasis added.)

In January of 1967 this court in *Board of County Commissioners v. Brookover,* 198 Kan. 70, 422 P. 2d 906, restated and reaffirmed the foregoing elementary principles of law. There the appeal was from an order of the district court denying the Board of County Commissioners of Shawnee County, Kansas, injunctive relief from an order of the Board of Tax Appeals directing a reappraisal of all the taxable real estate in Shawnee County. In affirming the lower court it was said:

"A brief discussion of the power of courts to review and control administrative orders of tax boards or commissions may tend to answer many of the issues raised by appellants.

"Appellees do not dispute the appellant's contention that there is no right of appeal from the order in question. There being no right of appeal, judicial redress for illegal, fraudulent or oppressive conduct by the administrative board may be invoked through one of the appropriate extraordinary legal remedies consisting of injunction, mandamus or quo warranto. (*State, ex rel., v. Davis,* 144 Kan. 708, 710, 62 P. 2d 893; *City of Kansas City v. Jones & Laughlin Steel Corp.,* 187 Kan. 701, 360 P. 2d 29.)

"The entire matter of taxation is legislative and does not exist apart from statute. (*Ness County v. Light & Ice Co.,* 110 Kan. 501, 204 Pac. 536; *Crawford County Comm'rs v. Radley et al.,* 134 Kan. 704, 8 P. 2d 386; *Shell Oil Co. v. Board of County Comm'rs,* 165 Kan. 642, 197 P. 2d 925; *Ray v. Board of County Comm'rs,* 173 Kan. 859, 252 P. 2d 899.) The assessment and valuation of property has always been considered an incident to the taxing

power.  (*Auditor of State v. Atchison, T. & S. F. R. Co.*, 6 Kan. 500; *Comm'rs of Wyandotte Co. v. Abbott*, 52 Kan. 148, 160, 34 Pac. 416.)

"The constitution of the State of Kansas provides:

" 'The legislature shall provide for a uniform and equal rate of assessment and taxation. . . .' (Art. 11, § 1.)

"As the power of taxation is a legislative function and the legislature is specifically charged with providing an equal rate of assessment it also has the authority to provide the means and agencies for enforcing its responsibility. (*Silven v. Osage County*, 76 Kan. 687, 689, 92 Pac. 604.)  . . .

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Matters of valuation and assessment are administrative in character and a determination of the Board of Tax Appeals acting within its legislative authority, when fairly and honestly made, is final and courts will not interfere so as to usurp the board's function or substitute their judgment for that of the board. (*Anderson v. Dunn*, 180 Kan. 811, 815, 308 P. 2d 154; *Hitch Land & Cattle Co. v. Board of County Commissioners*, 179 Kan. 357, 361, 295 P. 2d 640.)

"Before the courts will interfere the conduct of the board must be without authority or so arbitrary or unreasonable as to amount to fraud. (*Bank v. Geary County*, 102 Kan. 334, 170 Pac. 33, and see cases previously cited.) *It will also be understood that in the absence of substantial evidence to the contrary it will be presumed that the board responsible for the reappraisal of property for taxation purposes acted in good faith.*"  (pp. 73, 74.)  (Emphasis added.)

Perhaps of all the cases decided in the Supreme Court of Kansas on the matter of revising or correcting unequal assessments of property, the language used by the court in *Finney County v. Bullard*, 77 Kan. 349, 94 Pac. 129, was most emphatic.  There the plaintiff appealed his assessment to the Board of Equalization and thereafter appealed to the district court, "asking that tribunal to revalue his property" (p. 353) and for other relief.  Judgment in favor of the plaintiff was reversed by the Supreme Court with instructions to render judgment for the defendants.  The court said:

". . . The courts are not charged with the powers and duties of assessors, and have no right to review the decisions of those officers as to the value of property.  The legislature has placed the responsibility upon the assessors in the first instance, and in case an owner of property is dissatisfied with their assessments he may appeal to the board of equalization to review values and correct mistakes of judgment.  When the statute prescribed a method for revising or correcting unequal assessments that remedy alone must be followed.  *Since the statute gives no right of appeal from the board of equalization, its opinion and judgment as to valuation are plenary, and it is not within the power of the courts to interfere* with a tax merely because the assessment is excessive or unequal.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . The trial court, upon a limited inquiry as to values, has given as its opinion that Bullard's property is valued at fifteen percent higher than some

other lands in the county; but the law does not give an appeal from the board of equalization to the court, nor does it warrant the court in substituting its opinion of values for that of the officers who are invested by law with the sole authority to determine values. The statute does not contemplate, nor would it be practical to permit, a review and revaluation in the courts of the state at the instance of taxpayers who might complain of overvaluation by assessors. *The remedy for irregular or excessive assessments before the board of equalization was deemed by the legislature to be an adequate one, and in the absence of other grounds it is an exclusive remedy."* (pp. 354, 357.) (Emphasis added.)

Turning now to the instant case, in the private taxpayer action filed in Grant County, the plaintiffs therein as a class comprised all taxpayers in Grant County other than the plaintiffs herein; they did not allege the assessed valuation of their properties as made by the County Clerk for the year 1967 was in excess of thirty percent of justifiable value; and they did not allege that the action of the County Board of Equalization of Grant County or the State Board of Tax Appeals sitting as a State Board of Equalization was animated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud with regard to the assessment of their property for ad valorem tax purposes. What they did allege was that the action was brought "in the matter of reduction of taxes," and that the *Clerk of Grant County* "is using values for the working interests of said gas leaseholds at a different rate from that used to assess the royalty interests, minerals, and real and personal property of this plaintiff and others, and that such assessment results in discrimination against the plaintiff and others similarly situated." The petition in the next paragraph specifically stated the reason for the alleged discrimination—"That this situation was brought about by appeals by certain taxpayers from the justifiable value fixed and determined by the proper taxing authorities of Grant County, Kansas, to the Board of Tax Appeals of the State of Kansas, which resulted in a reduction of the justifiable value in the instances of such appeals of approximately 27%." The reference in the petition to "such appeals" was to the gas properties of the plaintiffs herein. The only party named as a defendant in such private taxpayer action in Grant County was the *County Clerk* of Grant County.

It is to be noted the State Board of Equalization was confronted with valuations on plaintiffs' gas properties made by the Grant County officials based upon the appraisal of a firm (Prichard and Abbott), foreign to the State of Kansas, pursuant to its own valuation formula for gas properties, which resulted in higher valuations for

such properties than the method of valuation or *schedule* for gas producing properties prepared by and distributed by the Director of Property Valuation Department of the State of Kansas. K. S. A. 1965 Supp. 79-306b imposed upon county assessors the duty to "assess all tangible personal property . . . at thirty percent (30%) of its justifiable value *the county assessor to determine such valuation by the use of valuation schedules, if any, furnished by the director of property valuation."* (Emphasis added.) The State Board after a full hearing and consideration of the appeals *found "the method of valuation, or schedule prepared by the Property Valuation Department of the State of Kansas, provides the best measure of justifiable value for gas producing properties."* (Emphasis added.)

The Board of Tax Appeals sitting as a State Board of Equalization *found the plaintiffs' gas properties had not been assessed uniformly and equally with other property in Grant County,* and in order to equalize the valuations with other property in Grant County it determined the values of the plaintiffs' gas properties should be adjusted as indicated on the schedule which it attached to the order. It therefore ordered that the equalized valuation of the plaintiffs' gas properties for 1967 be as fixed on the attached schedule *and directed the County officials of Grant County to correct their books and records in accordance with the provisions of such order.* The foregoing action taken by the Board of Tax Appeals was in conformity with the legislative mandate prescribed for equalizing the assessment of all property in Kansas between persons, firms or corporations of the same assessment district as authorized by K. S. A. 79-1409.

We construe the private taxpayer action filed in the district court of Grant County as tantamount to an appeal from an order of the State Board of Tax Appeals to the district court. But the law authorizes no appeal from the State Board of Tax Appeals sitting as a State Board of Equalization to the courts. Under all the circumstances heretofore related and the authorities heretofore cited and discussed, the petition in the private taxpayer action filed in the district court of Grant County disclosed on its face that the district court had no jurisdiction whatever to entertain the action. Since the statutes enacted by the legislature give no right of appeal to the courts from an order of the State Board of Tax Appeals, its opinion and judgment as to valuation are plenary, and

it is not within the power of the courts to interfere with a tax merely because the assessment may be excessive or unequal, absent the allegation of grounds which permit inquiry or intervention by a court of equity.

The defendants contend the judgment in the private taxpayer action in the district court is valid on the ground that it was filed pursuant to authority granted under and by virtue of K. S. A. 60-907 (a) and (c); that these statutes, together with K. S. A. 60-223, were cited as authority for such action filed in the district court. They contend this form of action has been approved in *Schulenberg v. City of Reading*, 196 Kan. 43, 410 P. 2d 324; and *Linder v. Board of County Commissioners*, 186 Kan. 107, 348 P. 2d 815, which presented the question as to whether or not a taxpayer plaintiff could maintain an injunction action to prevent an alleged illegal levy and collection of taxes.

It is true the provisions of 60-907 (a), *supra,* authorize injunctive relief for the illegal levy of any tax, charge or assessment, the collection thereof, or any proceeding to enforce the same; 60-907 (c), *supra,* authorizes the joinder of any number of persons whose property is or may be affected or whose taxes may be increased by such illegal acts; and 60-223, *supra,* authorizes a class action.

Generally speaking, K. S. A. 60-907 follows the provisions of G. S. 1949, 60-1121, originally enacted by the legislature in 1909 (L. 1909, ch. 182, § 265.) The language in 60-907, *supra,* is somewhat condensed and its provisions paragraphed for clarity, but no change of procedure or substance was intended. (Gard, Kansas Code of Civil Procedure Annotated, § 60-907, p. 623; and *Schulenberg v. City of Reading,* supra.)

Cases throughout the history of Kansas disclose that the expression "the illegal levy of any tax, charge or assessment," contained in 60-907, *supra,* and its predecessors, has reference to action of an administrative official or board taken without authority, or action of an administrative official or board which is permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud in connection with the levy of any tax, charge or assessment.

The difficulty confronting the respondents is that the petition in the private taxpayer action in the district court of Grant County fails to allege the illegal levy of any tax, charge or assessment. By no stretch of the imagination can the facts alleged in the private

taxpayer action be construed as action on the part of *the County Clerk of Grant County* which is permeated with fraud, corruption or conduct so oppressive, arbitrary or capricious as to amount to fraud. The County Clerk's legal duty under K. S. A. 79-1803 was clear—to change the valuations as directed by the State Board of Tax Appeals, the official board which is the highest administrative tribunal provided by law to determine controversies relating to assessment of property for ad valorem tax purposes. By the appeal of the plaintiffs herein to the State Board of Tax Appeals sitting as a State Board of Equalization, the County Clerk-Assessor and the County Board of Equalization were superseded and the whole controversy as to the assessment of the plaintiffs' gas properties became vested in the State Board as the superior administrative tribunal. Thereafter, action taken by any of the county officials was entirely subject to the decision of the State Board. (K. S. A. 79-1602; 79-1606; and 79-1409.) That body's order was a decision of an administrative nature rendered by statutory authority and conclusive not only upon the county officials, but upon all other taxpayers in Grant County—the plaintiffs in the private taxpayer action, who did not take an administrative appeal to the State Board of Tax Appeals relative to the assessment of their property by the Grant County officials. (*Builders, Inc. v. Board of County Commissioners,* 191 Kan. 379, 384, 381 P. 2d 527.)

Counsel for the respondents contend authority for the private taxpayer action in the district court of Grant County is found in *Addington v. Board of County Commissioners,* 191 Kan. 528, 382 P. 2d 315, which involves basically the matter of uniform and equal rate of taxation. They argue the plaintiffs in the instant action are asking the Supreme Court to overthrow the orders of the same district court which heard the *Addington* case, when its orders are consistent with securing uniformity and equality of taxation. They contend the district court is simply following the general and broad rules imposed in the *Addington* case.

It is to be noted in *Addington* the court specifically recognized the two remedies now available to an aggrieved taxpayer. The action there brought by the plaintiff was commenced pursuant to K. S. A. 79-2005 to contest the validity of the assessment and to recover the illegal portion of the taxes which were *paid under protest.* There the trial court concluded the plaintiff was required

to first exhaust his administrative remedies before he could resort to the recovery of taxes paid under protest, and this court said:

". . . Although it would be entirely appropriate, and perhaps good practice, for a taxpayer to first present a grievance such as this to the administrative boards provided in the section, even though he claimed the assessment and levy were actually illegal rather than merely erroneous, nevertheless, courts cannot compel the taxpayer to adopt that procedure when the legislature makes it merely a cumulative and not an exclusive remedy. In the instant case the tax was *an illegally assessed tax* and not merely the correction of an error, an irregularity or mistake. The action was properly brought under section 79-2005." (p. 533.) (Emphasis added.)

The court there said the fraud on the plaintiffs' rights resulted from the arbitrary distinction made between the plaintiffs' elevator property and other property in the county. Mere excessiveness of assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly excessive or intentionally or fraududently made, will entitle the taxpayer to relief. In the opinion the court said:

". . . In the instant case the rate of assessment fixed by the county clerk-assessor at more than thirty percent of the true value of plaintiff's property, as compared to the rate of assessment of twelve per cent of the market value of all other property located in the county and subject to the same tax levy, was so arbitrary, oppressive and grossly discriminatory that it constituted *constructive fraud* on the rights of the plaintiff as a taxpayer and destroyed uniformity and equality in the manner of fixing the assessed valuation; also, *it was illegal*, thereby entitling the plaintiff to the relief sought as to the illegal portion of the tax paid under protest." (p. 533.) (Emphasis added.)

The *Addington* case has no application to the facts here confronting the court for the following reasons: First, the court in *Addington* makes it clear that interference by a court, where authorized by the legislature pursuant to 79-2005, *supra*, by the payment of taxes under protest, requires conduct on the part of taxing officials which permits intervention by a court of equity—an *illegally* assessed tax—an assessment brought about by conduct "so arbitrary, oppressive and grossly discriminatory that it constituted *constructive fraud.*" (p. 533.) (Emphasis added.) Second, in *Addington* the administrative remedies available were not pursued by the taxpayer to the State Board of Tax Appeals and the assessment by the local taxing officials, who were made parties defendant, had not been superseded.

On the record here presented the district court in the private

taxpayer action in Grant County, Kansas, was simply an interloper with no authority whatever to assess property in Grant County, or to attempt interference with a clear legal duty imposed upon the Clerk of Grant County by the provisions of K. S. A. 79-1803 to comply with the order of the State Board of Tax Appeals equalizing the valuation and assessment of all property in Grant County (a separate assessment district; K. S. A. 1965 Supp. 79-1411b) pursuant to K. S. A. 79-1409. The district court of Grant County had no jurisdiction to hear the private taxpayer action as determined from the allegations of the petition therein; and it had no authority to order the County Clerk of Grant County to reduce the assessed valuation of all property in Grant County owned by the plaintiffs in the private taxpayer action by twenty-seven percent, and thereby nullify the action taken by the State Board of Tax Appeals sitting as a State Board of Equalization.

The plaintiffs in the private taxpayer action in Grant County, having failed to assert any grievance as to the assessment of their respective properties in Grant County to the highest administrative tribunal provided by the legislature, cannot, after the expiration of the time authorized for the assertion of such administrative remedy, seek redress from the decision of such tribunal as to other property in Grant County by judicial action in the manner here attempted.

We hold the judgment of the district court of Grant County in the private taxpayer action granting injunctive relief to the plaintiffs therein is a nullity and absolutely void, and the defendants herein have a clear legal duty to follow the applicable statutes as heretofore ordered by this court.

Why did the Supreme Court take jurisdiction of these original proceedings in mandamus?

We are bombarded by counsel for the respondents (the County Attorneys) and counsel for the interveners (Southwest Kansas Royalty Owners Association and its members) with technical rules designed to uphold an ingenious device conceived by mind's intent on circumventing established administrative tax procedures prescribed by the legislature on a matter in which the owners of gas leaseholds in three counties in Kansas, commonly known as the Kansas Hugoton gas field, are pitted against all other property owners in these counties. The issue between them is simply that if the companies owning the gas leaseholds can be made to bear more of the tax burden, the owners of other property will, in direct

proportion, be required to bear a smaller tax burden within their respective counties.

When the original petitions were filed in this court on October 13, 1967 (Grant and Stanton Counties), and October 16, 1967 (Morton County), it immediately became apparent that *time* for final action on the matter *was of the essence.* On or before the 1st day of November, 1967, the County Clerks of the respective counties were required to certify the taxes levied upon the real and personal property of their respective counties to the respective County Treasurers and charge the respective Treasurers with the amount of the respective taxes assessed on the tax roll (K. S. A. 79-1803). The taxes became due on the 1st day of November, 1967 (K. S. A. 79-1804). If proceedings to countermand the order of the district court in each of the private taxpayer actions in the three counties could be delayed beyond the 31st day of October, 1967, the plaintiffs in the private taxpayer actions would have won the first round in the battle to the detriment of the state government and the government of the three counties involved.

In the event final action to countermand such orders failed prior to November 1, 1967, the plaintiffs herein, of necessity, would have had to resort to the payment of taxes under protest (79-2005, *supra*). Without attempting to predetermine the result in the event of such proceedings, the exact portion of the taxes paid under protest, because of an illegal valuation or assessment of the gas properties, would be impounded in a separate fund and unavailable for the operation of the respective county governments until final action was taken in a court of law to resolve the issues. Under normal circumstances this would no doubt carry far beyond the year in which such funds were budgeted for the operation of the respective county and state governments, and for all practical purposes be lost to these respective governments for the year in which they were budgeted. If in such proceedings the plaintiffs each recovered the illegally assessed portion of the taxes paid under protest, such total amounts would never be available for the operation of the respective governments. Considering the extent of the gas properties held by the plaintiffs in Grant, Morton and Stanton Counties and their respective valuations, the payment of taxes by the plaintiffs herein under protest would have resulted in a substantial handicap to the operation of government in these three counties, or jeopardized the operation of such county governments.

While the legal remedy (resort to payment of taxes under pro-

test pursuant to 79-2005, *supra*) available to the plaintiffs herein may be adequate for the plaintiffs, the *totality of the situation* suggests that such legal remedy would be clearly inadequate to right the wrong occasioned by the intervention of the district court through its orders in the private taxpayer actions in the respective counties.

Prior decisions have recognized that mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact there also exists an adequate remedy at law. (*Emporia Township v. Williams*, 149 Kan. 860, 89 P. 2d 919; *State, ex rel., v. State Highway Comm.*, 132 Kan. 327, 295 Pac. 986; *Kittredge v. Boyd*, 136 Kan. 691, 18 P. 2d 563; and *State, ex rel., v. Peterson*, 147 Kan. 626, 78 P. 2d 60.)

A statement frequently quoted is found in *State, ex rel., v. State Highway Comm.*, supra. It reads:

". . . The use of mandamus to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties is common in this state. (R. S. 60-1701, 60-1702.) Our conceptions of the proper use of mandamus to expedite the official business of the state have expanded far beyond the ancient limitations of matters justiciable in mandamus. [citations]" (pp. 334, 335.)

A more recent case in point is *A. T. & S. F. Hospital Ass'n v. State Commission of Revenue & Taxation*, 173 Kan. 312, 246 P. 2d 299. There the defendants in an original mandamus proceeding in the Supreme Court argued the plaintiff had a plain and adequate remedy at law by reason of G. S. 1949, 79-2005 (as it then appeared), by the payment of taxes under protest. The statute authorizing injunctive relief for the illegal levy of any tax, charge or assessment was quoted in part (G. S. 1949, 60-1121) by the court, but it said:

"We have heretofore held that the remedy specified by G. S. 1949, 79-2005, was not an exclusive remedy. (See *Thompson v. Chautauqua County Comm'rs*, 147 Kan. 151, 75 P. 2d 839; also *Sherwood Const. Co. v. Board of County Comm'rs*, 167 Kan. 421, 207 P. 2d 409.) Probably the best statement of the rule is that in *Kittredge v. Boyd*, 136 Kan. 691, 18 P. 2d 563, where we said:

" '1. It is first contended that mandamus is not the proper remedy—that plaintiff has a plain and adequate remedy at law. In this jurisdiction where the desideratum of the litigation is merely to obtain an authoritative determination of some purely legal question for the guidance of public officers mandamus has become the familiar vehicle to accomplish that objective. . . .' " (p. 361.)

The court then quoted the statement above from *State, ex rel., v. State Highway Comm.,* supra, and said:

"*There is an important public question here and in accordance with the foregoing authorities we shall exercise our original jurisdiction in mandamus and settle it.*" (p. 316.) (Emphasis added.)

K. S. A. 60-801 provides:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

The above section is a part of the new code of civil procedure, and was designed to supplant G. S. 1949, 60-1701 and 1702. Gard, in his work on the new code of civil procedure, says that no change was intended, except to make the procedure for the utilization of the remedy uniform and consistent with that indicated for other types of action. He says the definition of mandamus in 60-801, *supra,* is short, concise and sufficient.

". . . It is available for the purpose of compelling the performance of a clearly defined duty, not involving the exercise of discretion, by a person or a corporation whose duty arises out of a trust relationship, or a public or corporate responsibility. The former statute spelled out these limitations *and also the further limitation that the remedy is not available where there is a plain and adequate legal remedy. . . .*" (Gard, Kansas Code of Civil Procedure Annotated, § 60-801, pp. 607, 608.) (Emphasis added.)

Objection is made that the proceedings herein are designed as a collateral attack upon the judgment of a court of competent jurisdiction in each of the three counties here involved. While we have been cited to no case holding mandamus to be an improper remedy in the situation here confronting the court, a case bearing on the point is *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.,* 12 Kan. 127. There, in an opinion written by Justice Brewer, it was held that mandamus will not ordinarily be issued to command doing of an act enjoined by the decree of a competent court; but when one who was not a party to that decree had rights which could be secured only by writ of mandamus, it can be used. There a valid decree was entered by the Circuit Court of the United States for the District of Kansas, while here we are concerned with decrees issued by the district courts in three counties having jurisdiction inferior to the Supreme Court, and where such decrees have been demonstrated to be absolutely void and of no force and effect. The court there said in the opinion:

"But it is insisted that whatever rights the plaintiff may have, must be enforced in a different action; that no mandamus will ever issue to command the doing of an act which is forbidden to be done by a valid injunction order of a competent court, because thus the party would be placed between two fires, and liable to punishment for contempt in either event. It is said that the writ of mandamus lies within the discretion of the court, and that the mere fact that a party has rights will not necessarily entitle him to the writ; that no court will exercise this discretion in such manner as to place the defendant in jeopardy of punishment. That this writ, originally a prerogative writ, and solely a matter of discretion, still partakes of its original nature so far that it yet remains largely within the discretion of the court, cannot be doubted: *The State, ex rel., Wells, v. Marston,* 6 Kas., 525. But in the exercise of that discretion regard must be had to the rights of the plaintiff, as well as to the dangers of the defendant. If those rights can be secured only through this writ, it would be simply an abuse of discretion to refuse it. If the plaintiff has any rights, the law guarantees to it a time, and place, and tribunal to enforce them. Those rights cannot be destroyed by a decree to which it is neither party nor privy." (p. 136.)

The foregoing rule, though recognized as an exception to the general rule, was reasserted in *State v. Hornaday,* 62 Kan. 334, 62 Pac. 998.

The Supreme Court is granted original jurisdiction in proceedings in mandamus by the Kansas Constitution. (Art. 3, § 3.) This jurisdiction is plenary and may be exercised to control the action of inferior courts, over whom the Supreme Court has superintending authority. (*Bishop v. Fischer,* 94 Kan. 105, 145 Pac. 890; *Amalgamated Meat Cutters, Etc. v. Johnson,* 178 Kan. 405, 286 P. 2d 182; and authorities cited in these cases.) In the *Bishop* case and in the authorities cited therein original jurisdiction in mandamus was exercised to give *speedy relief* where the inferior court, without having jurisdiction over the plaintiff or his property, and without notice, issued a mandatory injunction which in effect adjudicated the plaintiff's rights and deprived the plaintiff of the peaceable possession of his property. There it was said the action taken by the inferior tribunal could not be justified as an exercise of judicial power and was manifestly an abuse and perversion of process. The order was held to be in excess of the inferior court's jurisdiction and absolutely void. Appropriate relief was granted.

It is, of course, axiomatic under our procedure that a void judgment or order is a nullity and may be collaterally attacked at any time. (*Friesen v. Friesen,* 196 Kan. 319, 410 P. 2d 429; and cases cited therein; and see K. S. A. 60-260 [*b*].)

In the early history of Kansas it was held that a stranger to the

record could collaterally impeach a judgment where such stranger held some pre-existing, independent, and conflicting right that would be affected injuriously if the judgment were allowed to have full operation. (*Simpson v. Kimberlin*, 12 Kan. 579.)

Procedure has been recognized wherein the collateral attack made upon a void judgment, by one who was not a party to the proceeding which resulted in such judgment, may be made in a court other than the one in which the judgment was entered. (*Steinkirchner v. Linscheid*, 164 Kan. 179, 188 P. 2d 960.) A void judgment in the justice court was collaterally attacked in the district court and held subject to collateral impeachment in *Patterson v. Montgomery County Comm'rs*, 145 Kan. 559, 66 P. 2d 400.

The precedent established by the foregoing authorities is sufficient to warrant the statement of a rule fashioned to control the situation at hand by the exercise of original mandamus jurisdiction in the Supreme Court.

The use of mandamus is proper to secure the speedy adjudication of questions of law for the guidance of public officials in their administration of the public business, where the totality of the situation suggests that a legal remedy available to the plaintiffs would be clearly inadequate to meet the public need, notwithstanding that a collateral attack is made upon a void mandatory injunction decree entered by a court of inferior jurisdiction, wherein the plaintiffs were not parties to such action and are clearly entitled to relief. In other words, the plaintiffs in each of the three actions herein are permitted to make a collateral attack upon the judgment of the district court, which enjoined the County Clerk in the private taxpayer action from spreading the values as equalized by the State Board of Tax Appeals on the tax roll.

Original jurisdiction of the Supreme Court *will not ordinarily* be exercised if adequate relief appears to be available in a court of concurrent jurisdiction. (Supreme Court Rule No. 4, 197 Kan. LX.) Here the district court of the three counties involved is a court of concurrent jurisdiction, and as required by Rule No. 4 the petitions allege the reasons why the action is brought in the Supreme Court instead of in such court of concurrent jurisdiction—that such action would be futile and useless, among all other allegations to be considered in the respective petitions.

While a mandamus action filed in the respective district courts of the three counties (the same district judge) here involved may

have been futile and useless, particularly if final action was delayed beyond October 31, 1967, in each of the cases, we considered the allegations in the petitions (here consolidated for disposition) to be *so extraordinary and of such concern to the public of this state and the operation of the county governments in Grant, Morton and Stanton Counties* as to require *immediate* attention by this court.

It has been said that mandamus will not lie at the instance of a private citizen to compel the performance of a public duty; that such a suit must be brought in the name of the state, and the County Attorney and the Attorney General are the officers authorized to use the name of the state in legal proceedings to enforce the performance of public duties. Where, however, an individual shows an injury or interest specific and peculiar to himself, and not one that he shares with the community in general, the remedy of mandamus and the other extraordinary remedies are available. (*Bobbett v. State, ex rel. Dresher,* 10 Kan. 9; *Hawkins v. Gregory,* 138 Kan. 477, 26 P. 2d 247; and *Rowlands v. State,* 187 Kan. 174, 354 P. 2d 674.)

Whether or not a private individual has brought himself within the narrow limits of the well-established rule must be determined from the particular facts of each individual case. (*Rowlands v. State,* supra.)

On the particular facts here confronting the court, the plaintiffs collectively in each of the respective actions have shown an interest specific and peculiar in themselves, which they do not share with all other taxpayers in their respective counties. They were singled out in the private taxpayer actions in each of the counties for different treatment. Had they been required to resort to the County Attorneys of the respective counties here involved for action, it is unlikely that they would have met with much success. In each of the private taxpayer actions in these respective counties the County Attorney, who represented the County Clerk, alleged in the answer on behalf of the County Clerk that the County Clerk was compelled by law to spread the values as equalized by the Kansas Board of Tax Appeals on the roll as set forth in the record, but immediately thereafter the County Attorney entered into a stipulation of facts (¶1 of stipulation) contrary to the findings of the State Board of Tax Appeals, and further, failed to take an appeal from the judgment of the district court in such private taxpayer action on behalf of the County Clerk

The plaintiffs herein were not parties to these private taxpayer

actions, and claimed in oral argument they were given no notice of these private taxpayer actions or of the orders which had been entered therein; that it was only by chance that they discovered these orders. In Grant County the petition, answer, stipulation and order were all filed at 2:00 p. m. on September 7, 1967; in Stanton County they were all filed on September 11, 1967; and in Morton County the petition and answer were both filed at 2:10 p. m. on September 5, 1967, and the stipulation and order were both filed at 1:50 p. m. on the following day. No summons was ever issued or returned in any of these actions.

For the reasons stated, this court in the exercise of its power of discretion took jurisdiction in these original proceedings in mandamus, and after hearing the matter determined the mandatory injunction decree entered by the district court in each of the three counties (Grant, Morton and Stanton) in the private taxpayer action was void and of no force and effect. It thereupon entered orders for the plaintiffs as requested in their respective petitions on the 31st day of October, 1967, in accordance with the order heretofore set forth.

FATZER, J., dissenting: In my judgment the court improvidently issued its order of mandamus on October 31, 1967, here confirmed by the majority opinion, and I must respectfully dissent. Although time presses, I feel compelled to state my views.

The issues presented in the cases in the district courts of Grant, Stanton and Morton Counties were identical, and all reference to Grant County, the county clerk, and the district court, applies as well to Stanton and Morton Counties. The plaintiffs in the instant action are referred to as the private plaintiffs.

The court has unnecessarily, and I think mistakenly, injected itself into the long existing controversy between the land and royalty owners in the Hugoton Gas Field, on the one hand, and the owners of the leasehold interests or the producing companies, on the other hand. This "running fight" is extraordinary and has raged from the hearing rooms of the State Corporation Commission to the cloistered chambers of the Supreme Court of the United States. It has drawn in this court, the Federal Power Commission, state and federal district courts, members of the Legislature, leading members of our Bar, and the county attorneys of most every county in the Hugoton Gas Field. The controversy has flared

for many years and the end is not yet. Actions by land and royalty owners are presently pending in the federal district court of Kansas over the proceeds of the sale of helium to the United States government extracted from gas produced in that area of our state, which, according to some experts, amount to many millions of dollars, not to mention the hundreds of cases pending in our district courts to recover the price differential for the sale of gas involving orders of the FPC, the contract price, and the .11 cent wellhead price order issued by the State Corporation Commission which was sustained by this court in *Cities Service Gas Co. v. State Corporation Commission*, 180 Kan. 454, 304 P. 2d 528, and reversed by the Supreme Court of the United States, without formal opinion, in *Cities Service v. State Comm'n*, 355 U. S. 391, 2 L. Ed. 2d 355, 78 S. Ct. 381, rehearing denied 355 U. S. 967, 2 L. Ed. 2d 542, 78 S. Ct. 531.

The majority opinion states the court issued its order of mandamus on October 31, 1967, primarily for the reason that *"time . . . was the essence"* since on the following day (November 1, 1967), the 1967 ad valorem taxes would be certified by the county clerk and become due and become a lien upon the properties involved, and, further, that if the order were not issued on that date, the private plaintiffs herein "would have had to resort to the payment of taxes under protest (79-2005, *supra*)" which "would have resulted in a substantial handicap to the operation of government in these three counties, or jeopardized the operation of such county governments," and produce a situation *"so extraordinary and of such concern to the public of this state and to the operation of the county governments . . .* as to require *immediate attention by this court."* But this explanation does not let the court off the horns of the dilemma, since it is reasonable to expect that countless land and royalty owners in Grant County have paid and will pay their 1967 taxes under protest pursuant to K. S. A. 79-2005, causing the alleged illegal taxes to be impounded in a separate fund and unavailable for the operation of county government until a court of law has determined the validity of those protests. As a result of the "running fight," the financial structure of Grant County will doubtless be impaired, and the reasons advanced by the majority opinion in support of the court's issuance of the order of mandamus are unavailing.

Moreover, this court issued its order of mandamus despite the

allegations of the private plaintiffs that they "commenced no proceedings . . . in the district court of Grant County for the reason that . . . *any such action would be futile and useless.*" (Emphasis supplied.) The allegation is totally unsupported and is an insult to our judicial system. Be that as it may, the district court of Grant County has jurisdiction in mandamus actions concurrent with that of the supreme court. While the supreme court has original jurisdiction in mandamus in certain instances and under certain circumstances, it also has appellate jurisdiction over all district courts, including the district court of Grant County. I regret to say, and I do so with deference—that the majority's broadside at the mandatory injunction decree of the district court creates confusion in the administration of justice and violates well settled rules of orderly procedure relating to appellate review of judgments of district courts based upon statutory laws and decisions of this court construing them, all of which tends to belittle and degrade our district court system. Our original jurisdiction should not be perverted by the issuance of orders in mandamus actions commenced by private citizens to compel public officials to perform their duties, and more specifically, the remedy should not be made available to review judgments of district courts of this state. In *Bishop v. Fischer,* 94 Kan. 105, 145 Pac. 890, Mr. Justice Burch said: "*The action of mandamus cannot be used as a substitute for appeal,* nor in any case where a plain and adequate remedy at law exists." (Emphasis supplied.) In *State, ex rel., v. Norton,* 20 Kan. 506, Mr. Justice Brewer said: ". . . The writ [of mandamus] *never attempted to correct errors in the rulings of judicial officers,* but only to compel them to make a ruling . . ." (Emphasis supplied.)

In addition, sometime between September 7, 1967, the date the mandatory injunction decree was entered in Grant County, and October 16, 1967, the date the instant action was filed in this court, the private plaintiffs were advised of the nature of the judgment entered in Grant County. Under those circumstances, and pursuant to *Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261, the private plaintiffs should have made "timely application" to intervene in that action. (K. S. A. 60-224 [a] [2].) As the majority opinion indicates, the private plaintiffs not only had an adequate remedy at law available to them by paying their taxes under protest, but, as I understand the *Moyer* case, they had the right to

intervene and appeal the judgment of the district court of Grant County and to have that judgment reviewed by this court in the manner provided by law. Failing in those respects, this court should not have issued its order of mandamus.

The record affirmatively discloses the county clerk of Grant County complied in all respects with the orders of the State Board of Equalization by extending the assessment valuations therein established upon the private plaintiffs' leasehold interests. Thus, it cannot be said the county clerk arbitrarily failed or refused to perform a clear-cut legal duty imposed upon her by law. Hence, the only obvious purpose of this court's order of mandamus is to collaterally attack the judgment of the district court of Grant County under the guise that the judgment was *absolutely void*. As hereafter noted, it should be borne in mind there is a clear legal distinction between a void judgment and an erroneous judgment.

Is the remedy of mandamus available to the private plaintiffs? In my judgment it is not. In the first place, the instant action is essentially one which questions the validity of assessments of real and personal property in Grant County and the levy of taxes thereon. In the second place, the issuance of the order of mandamus was based entirely upon the conclusion that the mandatory injunction decree of the district court of Grant County was absolutely void. I will discuss the points in the order stated after two primary matters are dealt with.

First, I briefly refer to our new statutes pertaining to mandamus. I do not understand that the new code of civil procedure, which repealed our prior statutes relating to mandamus (G. S. 1949, 60-1701 - 60-1712) and enacted K. S. A. 60-801 - 60-803, made any change in substantive rights with respect to the extent of the reach of the remedy and who are proper parties plaintiff in a given situation. The Advisory Committee Notes expressly state no substantive rights were affected and in his Kansas Code of Civil Procedure, Judge Gard states the prior case law of Kansas will continue to have authoritative impact under the new code. (Sec. 60-802, p. 610.) Under our prior law, the action was required to be prosecuted in the name of the real party in interest. (*State v. County of Jefferson*, 11 Kan. * 66.) While mandamus is now defined (K. S. A. 60-801), the change of the name from "writ" to "order" did not change the traditional character of the remedy, and the provision that the remedy is obtainable "under the same procedure as relief in other civil actions" (K. S. A. 60-802 [a]), simply means

that the petition for the remedy, the answer to the petition, and perhaps the reply, constitute the pleadings on which the issue is tried. (5 Vernon's Kansas Statutes Annotated Code of Civ. Proc. [Fowks, Harvey, Thomas], § 803.) Hence, mandamus still remains unusual relief (an extraordinary, discretionary remedy), but granted in the usual manner of civil actions.

Second, we were told in oral argument that the private taxpayer action in Grant County was commenced pursuant to K. S. A. 60-907 and 60-223. The briefs of the defendants and the intervenors make the same claim. That action had all the appearance of what purports to be a class action, but named only Frank R. Collins as plaintiff. Both statutes were referred to in *Schulenberg v. City of Reading,* 196 Kan. 43, 410 P. 2d 324 (p. 48), but it was unnecessary to determine whether the provisions of 60-223 authorized a class action for injunctive relief against an illegal assessment or levy of taxes. The point is here mentioned only because the majority opinion implies that this action was commenced by the plaintiff as a class action pursuant to 60-223, and comprised all the taxpayers in Grant County, other than the private plaintiffs. Hence, I deem it appropriate to make the following observation with respect to the application of both statutes.

Sec. 60-223 (3) states the general rule of bringing a class action where the right sought to be enforced for the class is several, and there is a common question of law or fact affecting the several rights and a common relief is sought. (2 Vernon's Kansas Statutes Annotated Code of Civ. Proc. [Fowks, Harvey, Thomas]; Law Review, and other commentaries.) Sec. 60-907 authorizes the bringing of an action to enjoin an illegal assessment or levy of a tax or charge, or any proceeding to enforce it, and deals with that specific matter, and with that alone. The statutes should be construed harmoniously, so that each has a field for its operation, if that reasonably can be done. Following the general rule that a statute pertaining to a specific thing takes precedence over and controls the application of a general statute which might be construed to relate to it (*Wulf v. Fitzpatrick,* 124 Kan. 642, 261 Pac. 838; *Sherman County Comm'rs v. Alden,* 158 Kan. 487, 148 P. 2d 509; *Cutrel v. Best,* 169 Kan. 16, 217 P. 2d 270), it is clear to me that 60-907 is valid and applicable to the specific subject matter to which it relates, and that 60-223 is inapplicable for injunctive relief to restrain an illegal assessment, tax or charge. The conclusion logically

follows since 60-907 provides that any number of persons *whose property is or may be affected may join in the petition for injunction.* This requirement complements K. S. A. 79-2005, providing in effect that any person may pay his taxes under protest, and timely pursue the remedies provided. The procedure and actions authorized by that statute are clearly individual.

It follows that since Frank R. Collins was the only named plaintiff in the private taxpayer action, the judgment of the district court entered on September 7, 1967, should be construed as being applicable only to his property in Grant County.

Turning now to the first point with respect to the availability of the remedy. Our cases are legion that mandamus will not lie at the instance of private citizens to compel the performance of a public duty, and that such actions must be brought in the name of the state on the relation of the county attorney or the attorney general. In *Smith v. City of Prairie Village,* 175 Kan. 469, 471, 264 P. 2d 1053, Mr. Chief Justice Harvey collected and cited a few of our many cases on the point. There are cases holding that where an individual shows an injury or interest specific and peculiar to himself, and one not shared with the community in general, the remedy of mandamus may be available. However, an exception to that rule has been engrafted in the remedy with respect to original actions in mandamus in the supreme court by aggrieved taxpayers. In *Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651, it was held:

"Taxpayers specially aggrieved by the action of public officials in levying taxes against their property have a right of action provided by the code to enjoin such levy or assessment, if such remedy is promptly invoked; *but they have no general legal right to question the validity of such levy or assessment by instituting an original action in mandamus in the supreme court to compel the public officers to perform their official duty.*

"An action to compel public officials to perform their duty should be brought in the name of the state on the relation of the county attorney or attorney-general, *and such action cannot ordinarily be maintained by a private citizen.*" (Syl. ¶¶ 2, 3.) (Emphasis supplied.)

See, also, *Smith v. City of Prairie Village,* supra.

It would have been improper for the county attorney to have commenced mandamus in this court in the name of the state for and on behalf of the private plaintiffs. As counsel of record for the county clerk in the district court (K. S. A. 19-702, 19-704), the county attorney would have violated his duty as an attorney to commence such an action. See American Bar Association Com-

mittee on Legal Ethics, Canon Nos. 6 and 37. See, also, *State v. Leigh,* 178 Kan. 549, 289 P. 2d 774, and *Wilson v. Wahl,* 182 Kan. 532, 537, 322 P. 2d 804, where the attorney-client relationship insofar as here applicable, is discussed. But that did not excuse the private plaintiffs from alleging they requested the attorney general to institute an original action in mandamus in the supreme court, or that such official refused, particularly where the original mandamus action sought to collaterally attack the judgment of the district court of Grant County as being void.

The majority opinion states the court has been cited to no case holding mandamus to be an improper remedy in the situation confronting the court. Perhaps so. Counsel for the defendants were afforded little time to brief the legal questions presented, and were not afforded copies of the private plaintiffs' brief prior to oral argument on October 30, 1967. Syllabus paragraph 16 of the majority opinion states in effect that the legal remedy available to the private plaintiffs would be clearly inadequate notwithstanding a collateral attack is made upon a void mandatory injunction decree entered by a district court where the plaintiffs were not parties to such action and are clearly entitled to relief. The opinion cites and quotes from *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.,* 12 Kan. 127, to the effect that mandamus will not ordinarily be issued to command the doing of an act enjoined by the decree of a competent court, *particularly when one not a party to that decree had rights which could be secured only by a writ of mandamus.* Justice Brewer's opinion expressly recognizes that mandamus will not lie *where there is a plain and adequate remedy in the ordinary proceeding of the law,* but where the ordinary remedies of law are insufficient for a proper enforcement of the right claimed, the writ may be available. There, the plaintiff sought to compel the issuance of railroad aid bonds by the county and Justice Brewer stated it was difficult to say by what proceedings other than mandamus the bonds could be obtained. Be that as it may, that opinion was properly labled as an exception to the rule in *State v. Hornaday,* 62 Kan. 334, 62 Pac. 998.

In the *Hornaday* case the state on the relation of the attorney general commenced an original action in mandamus in the supreme court to compel the members of the Board of Trustees of the charitable institutions of this state to comply with an act of the Legislature

and proceed in the performance of their duties. Mr. Chief Justice Doster, speaking for the court, said:

"Two principal defenses are stated in the return to the writ: (1) That the members of the board, before the service of the writ, had been enjoined by the district court of Clay county, in an action instituted against them by the state of Kansas, upon the relation of the county attorney, from doing the required act; (2) that no statutory authority exists for its performance by them. The matter alleged in the first of the above claims of defense is admitted to be true, and we are of the opinion, without doubt, that such defense is a valid one.

" 'The rule is well established that the writ will not be granted to compel the performance of an act which has been expressly forbidden by an injunction in the same court or in another court of competent jurisdiction, or whose performance would be in direct violation of an existing injunction, *even though the person seeking relief by mandamus is not a party to the injunction suit.* Courts will not compel parties to perform acts which would subject them to punishment, or which would put them in conflict with the order of writ of another court, nor will the court, in such cases, to which application is made for a mandamus, inquire into the propriety of the injunction.' (High, Extr. Leg. Rem. § 23.)

"The case of *Ohio & Indiana R. R. Co. v. Comm'rs of Wyandot County,* 7 Ohio St. 278, and many other like cases, support the quoted text. There are occasional apparent exceptions to this rule, one of which is *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.,* 12 Kan. 127, *but the general doctrine is as stated.* The ground of the decision in that case was that the one seeking relief by mandamus had been denied admission as a party to the injunction proceeding, *and, besides, had rights which could be ultimately enforced only by mandamus. Therefore, while the district courts are courts of jurisdiction inferior to the supreme court, we cannot arbitrarily ignore their judgments and orders and command the doing of an act which they, within the undoubted limits of their jurisdiction, have enjoined. We may reverse or otherwise revise their judgments and orders, but we can only do so when brought to us in a formal way for such purpose."* (l. c. 335, 336.) (Emphasis supplied.)

The rule stated in *Hornaday* was reaffirmed and applied *in State v. Snelling,* 71 Kan. 499, 80 Pac. 966, which was an original action in mandamus in the supreme court commenced in the name of the state on the relation of the county attorney to compel the judge of the Court of Coffeyville to issue warrants for the arrest of certain persons. The answer to the writ pleaded an injunction issued by the district court against the county commissioners, the sheriff and his deputies, and the county attorney, from arresting the employees of a gas company who were engaged in laying mains and pipe across the roads and highways of the county. It was held that to have issued a writ of mandamus would violate the terms of the injunction of the district court and that the supreme court will not, by manda-

mus, require the magistrate to issue warrants in violation of the injunction. I have no doubt but that the rule stated in *Hornaday* is the law of this state.

It is true the private plaintiffs were not parties to the action in the district court of Grant County. No substantial reason was alleged why the private plaintiffs could not have applied to be made parties, or to intervene in that action, and set up every claim which has been set up in the petition for this order. They only alleged it would have been *futile and useless* to commence proceedings in that court. As indicated, they had at least two adequate remedies at law available to them: First, to have timely intervened pursuant to 60-224 (*a*) (2), and, as construed and applied in *Moyer*, supra, to have perfected an appeal from that judgment, and second, to have paid their taxes under protest and commenced actions in the district court of Grant County to recover the alleged illegal taxes. See our recent cases of *Cities Service Oil Co. v. Kronewitter*, 199 Kan. 228, 428 P. 2d 804, and *Cities Service Oil Co. v. State Board of Equalization*, 199 Kan. 235, 428 P. 2d 456. In either instance, and in the event of an adverse judgment, the question could have been presented to this court in accordance with well established rules of appellate procedure. It has been consistently held that the remedy of mandamus will not lie where there is an adequate remedy by appeal. (*Brockman v. Bayman*, 135 Kan. 238, 10 P. 2d 31; *Gray v. Jenkins*, 183 Kan. 251, 326 P. 2d 319). To entitle the private plaintiffs to an order of mandamus, the record must disclose affirmatively that there was no plain and adequate remedy in the ordinary course of the law and in the absence of such a showing, the court should not have issued its order of October 31, 1967.

The majority opinion states that the private taxpayer action in the district court of Grant County is construed ". . . as tantamount to an appeal from an order of the State Board of Tax Appeals to the district court"; that the order of the State Board of Equalization was "*conclusive* not only upon the county officials, but upon all other taxpayers in Grant County—the plaintiffs in the private taxpayer action" (emphasis supplied), and "that the district court in the private taxpayer action in Grant County, Kansas, was simply an interloper"; that the district court "had no jurisdiction to hear the private taxpayers action," and that the court's judgment "granting injunctive relief to the plaintiffs therein is a nullity and absolutely void."

The statements are too broad and sweeping. I cannot agree that any of our district courts are "interlopers" in any judicial matter pending before them. Neither can I agree that the action in the district court of Grant County was "an appeal from an order of the State Board of Tax Appeals." No such right of appeal exists. (*Board of County Commissioners v. Brookover*, 198 Kan. 70, 422 P. 2d 906.) Moreover, there is nothing sacrosanct about an order of the State Board of Equalization, and when questioned in litigation, it is the judiciary which must pass upon its validity. Of course, such an order is binding on the county clerk as to the valuations certified in the particular order (K. S. A. 79-1409 and 79-1803), since its regularity is presumed, based upon the presumption the Board acted honestly and in good faith. The rule assumes that proper methods have been followed and an under or over valuation, if any, is a matter of the exercise of judgment. (*Hitch Land & Cattle Co. v. Board of County Commissioners*, 179 Kan. 357, 364, 295 P. 2d 640.) However, courts may inquire into the validity of orders issued by the State Board of Equalization. In *Salt Co. v. Ellsworth County*, 82 Kan. 203, 107 Pac. 640, it was held:

"While the decision of the tax commission in fixing and equalizing the assessment of property is plenary and final when honestly, although erroneously, made, the petition of a taxpayer for an injunction, in which it was alleged that the tax commission had fixed an exorbitant and excessive valuation upon plaintiff's property, one which the commission knew to be grossly excessive, and that it had placed a valuation on plaintiff's property much higher [or much lower] than it had placed on similar property owned by others, stated a good cause of action for equitable relief, and the demurrer thereto should have been overruled." (Syllabus.)

In the opinion it was said that mere error of judgment of the assessing officer is no reason for interference by a court, but a taxpayer is entitled to the honest judgment of the assessing officers, and if an assessment is fraudulently made excessive, or if it is arbitrarily or capriciously made and is so out of proportion to the actual value as to give reasonable assurance that the officers could not have been honest in fixing the valuation, courts of equity are justified in enjoining the enforcement of the tax. It was further said the fact that the State Board of Equalization did not obtain the best evidence of value or adopt the best plan in estimating the value of the property does not necessarily entitle the plaintiff to an injunction; it must appear that the theory in its practical operation was hurtful to the plaintiff and that through the arbitrary, capricious

and fraudulent action of the taxing officers, an unjust assessment was made. The case was reaffirmed and quoted from in *Bank v. Lyon County*, 83 Kan. 376, 379, 111 Pac. 496.

In *Hitch Land & Cattle Co. v. Board of County Commissioners*, supra, the plaintiff-appellee pursued the administrative remedies available and presented its assessment grievance to the County Board of Equalization. The county board denied the relief sought and the company appealed to the State Commission of Revenue and Taxation, sitting as the State Board of Equalization. The State Board of Equalization issued its order that the facts did not justify a reduction of the valuation and assessment and sustained the county board. The plaintiff, having paid its taxes under protest (79-2005), commenced an action in the district court. Despite the fact the plaintiff had pursued administrative tax assessment remedies, including the issuance of an order by the State Board of Equalization, the court entered judgment sustaining the plaintiff in all respects, and upon appeal, this court affirmed. Directing its attention to the contention the district court was without power to place a valuation on the plaintiff's land and compute the tax, the court, speaking through Justice Thiele, said:

". . . While viewed from one angle it might be said the trial court had to fix a valuation in order to determine the issue, it is more nearly correct to say that under the facts stipulated the valuation was too high in an amount equal to the valuation placed on the severed mineral interests, and all that was involved was a mere calculation." (l. c. 364.)

Was the judgment of the district court of Grant County void? The crux of this case is the court's failure to distinguish between the exercise of its power to review a case on its merits formally before it for appellate review pursuant to K. S. A. 60-2101 (*b*), and the limitation of its power to determine the validity of a judgment rendered by a district court which is collaterally attacked in an original proceeding in mandamus as being void. It is unnecessary to pass upon the merits of the mandatory injunction decree since that judgment is not before the court for appellate review. I cannot agree that the district court of Grant County did not have jurisdiction to hear and determine the Collins' private taxpayer action. As hereafter indicated, the distinction between lack of jurisdiction and any error affecting a decision of a court is of practical importance in that where a court has jurisdiction, an erroneous decision is not void, and is therefore, not subject to collateral attack. (20 Am. Jur. 2d, Courts, § 90, pp. 450, 451.) Time does not permit the

research of all our decisions on the point, but a few of them include: *Bradford v. Larkin,* 57 Kan. 90, 45 Pac. 69; *Eberhardt Lumber Co. v. Lecuyer,* 153 Kan. 386, 110 P. 2d 757; *Bitzer v. Smith,* 158 Kan. 83, 145 P. 2d 148; *Bindley v. Mitchell,* 170 Kan. 653, 228 P. 2d 689, and *In re Estate of Johnson,* 180 Kan. 740, 308 P. 2d 100.

Our statute (K. S. A. 60-907) expressly gives the district court jurisdiction to hear and determine suits brought by private taxpayers to obtain injunctive relief against an illegal assessment or an illegal levy of any tax or charge, or any proceeding to enforce the same. The purpose of the private taxpayer action was to enjoin the assessment of plaintiff Collins' land and mineral interests alleged to be at a rate in excess of 27 percent of the assessed valuation of the private plaintiffs' properties. The action was not only authorized by 60-907, but by many decisions of this court. (*C. B. & Q. Rld. Co. v. Comm'rs of Atchison Co.,* 54 Kan. 781, 39 Pac. 1039; *Bank of Garnett v. Ferris,* 55 Kan. 120, 122, 123, 39 Pac. 1042; *Bank v. Lyon County,* supra; *Railroad Co. v. Mitchell County,* 110 Kan. 582, 584, 204 Pac. 729; *Patterson v. Montgomery County Comm'rs,* 145 Kan. 559, 66 Pac. 2d 400; *Hitch Land & Cattle Co. v. Board of County Commissioners,* supra; *Kansas City Southern Rly. Co. v. Board of County Comm'rs,* 183 Kan. 675, 331 P. 2d 899.) See, also, *Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1, holding that a district court has the power to determine whether the assessment valuation was arbitrarily or unreasonably made by the State Tax Commission. See, also, *Linder v. Board of County Commissioners,* 186 Kan. 107, 348 P. 2d 815, where the petition alleged the action was brought under G. S. 1949, 60-1121 (now K. S. A. 60-907), and it was said that the ultimate relief sought was precisely that mentioned in the statute, and the plaintiff was entitled to bring the action.

It has been uniformly held that where a court has jurisdiction of the parties to an action and of the subject matter and renders a judgment within its competency, even if erroneous, that judgment is final and conclusive unless corrected or modified on appeal, or by such other method as may be prescribed by statute, and it may not be attacked collaterally otherwise. A few of our many cases on the point are: *Rennolds v. Guthrie,* 103 Kan. 829, 177 Pac. 359; *Union Central Life Ins. Co. v. Pletcher,* 144 Kan. 359, 58 P. 2d 1158; *Middendorf v. Kansas Power & Light Co.* 166 Kan. 610, 203 P. 2d 156; *Farmer v. Farmer,* 177 Kan. 657, 281 P. 2d 1075, and *In re*

*Estate of Burling,* 179 Kan. 687, 298 P. 2d 290. In *In re Estate of Johnson,* supra, it was held:

"Jurisdiction is the power of a court to hear and decide a matter, and the test of jurisdiction is not a correct decision but a right to enter upon inquiry and make a decision; it is not limited to the power to decide a case rightly, but includes the power to decide it wrongly." (Syl. ¶ 3.)

Jurisdiction of a court to render a valid judgment depends upon three things: (1) The statutory authority of a court to entertain and decide questions which arise in the kind of action which was brought, and in the Collins' taxpayer action, means statutory authority of the court to hear and decide an action by a taxpayer in Grant County who feels himself aggrieved and seeks to enjoin an alleged illegal assessment or levy of any tax or charge. There can be no contention the district court lacked such authority. The statute specifically grants it. (2) Jurisdiction of the person of the defendant. This may depend upon whether he is properly named as party-defendant, and served with summons in a manner provided by law, or enters his voluntary appearance in the case. In the taxpayer action, the county clerk entered her appearance in the action and no summons was issued. (3) In order to render a particular judgment, the pleadings should present the question to be determined as an issue and contain sufficient facts to challenge the attention of the court as to its merits. (*Sheridan County Comm'rs v. Acre,* 160 Kan. 278, 160 P. 2d 250.)

The majority opinion concludes the allegations of the taxpayer's petition and the stipulation of facts failed to contain sufficient facts to state a cause of action for relief, thus rendering the judgment void, and subjecting it to collateral attack. Again, I do not agree the decree was void, though perhaps it was erroneous. In *Eberhardt Lumber Co. v. Lecuyer,* supra, it was said:

"Can appellant, under these circumstances, collaterally attack the sufficiency of the petition to state a cause of action for the relief granted? This court has long been committed to the doctrine that a petition which states no cause of action will sustain a judgment, good against a collateral attack, 'if it contains sufficient matter to challenge the attention of the court as to its merits.' (*Investment Co. v. Wyandotte County,* 86 Kan. 708, 709, 121 Pac. 1097, and cases therein cited.) See, also, *Head v. Daniels,* 38 Kan. 1, 15 Pac. 911; *Wyandotte County v. Investment Co.,* 80 Kan. 492, 103 Pac. 996; *McPherson v. Martinson,* 115 Kan. 828, 829, 224 Pac. 907." (l. c. 390.)

Of course, as was stated in *Investment Co. v. Wyandotte County,* 86 Kan. 708, 121 Pac. 1097, " '. . . if a mere blank paper is filed

as a petition, jurisdiction would not attach, because there would be nothing for the court to act upon.'" (p. 709.) In *In re Wallace,* 75 Kan. 432, 89 Pac. 687, it was held:

"Where the jurisdiction of the court depends upon a fact which the court is required to ascertain and decide its judgment determining that the fact does exist is conclusive evidence of jurisdiction until set aside or reversed by a direct proceeding." (Syl. ¶ 1.)

In the opinion, Mr. Chief Justice Johnston stated that where jurisdiction depends on a fact that is litigated in a suit, and is adjudicated in favor of the party who avers jurisdiction, then the question of jurisdiction is judicially decided and the judgment record is conclusive evidence of jurisdiction until set aside or reversed by a direct proceeding. See Shepard's Kansas Citations for cases following *In re Wallace.*

On the face of the record in the instant case, the district court of Grant County had jurisdiction of the parties and, in my judgment, it had jurisdiction of the subject matter since the private taxpayer's petition contained sufficient matters to challenge the attention of the district court as to its merits. Assuming, *arguendo,* the petition failed to state a cause of action, as the majority opinion concludes, nevertheless it was sufficient to sustain the judgment against a collateral attack. (*Eberhardt Lumber Co. v. Lecuyer,* supra.) It is of no moment that the judgment may have been erroneous; where jurisdiction exists, the court has power to decide the case whether its decision is right or wrong. If there was error, the private plaintiffs should have timely intervened under the doctrine proclaimed in *Moyer,* supra, and perfected an appeal to this court.

The majority opinion criticizes the county attorney for entering into stipulation of facts with counsel for Frank R. Collins in contravention of the findings of the State Board of Appeals. In my opinion, the court's censure of the county attorney's conduct is not justified. As the chief legal advisor to the county officials, the county attorney has a special interest in the equal and uniform taxation of all property in the county subject to taxation, in the retention of lawful taxes paid to the county treasurer, and in the prompt collection of lawful taxes due and payable. In the exercise of its functions, the State Board of Tax Appeals must, as a matter of necessity, interpret the tax laws, and such interpretations are prima facie binding. However, where the county attorney has cause to believe the orders of the state board are erroneous as a

matter of law or result in lack of uniformity of taxation of the property in the county, he may properly defend against such orders. See *Robinson v. Jones,* 119 Kan. 609, 240 Pac. 957; *Chicago, R. I. & P. Rly. Co. v. Ford County Comm'rs,* 138 Kan. 516, 27 P. 2d 229; *Beacon Publishing Co. v. Burke,* 143 Kan. 248, 53 P. 2d 888, and *Kansas State Teachers Ass'n v. Cushman,* 186 Kan. 489, 501, 502, 351 P. 2d 19.

Other matters could be mentioned, but this dissent has grown too long. I conclude my dissent with the statement by which it was commenced—the court improvidently issued its order of mandamus on October 31, 1967.

PRICE, C. J., and KAUL, J., join in the foregoing dissent.